# Exhibit A

**SUMMONS – CIVIL**
JD-CV-1   Rev. 11-19
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259;
P.B. §§ 3-1 through 3-21, 8-1, 10-13

| For information on ADA accommodations, contact a court clerk or go to: *www.jud.ct.gov/ADA.* |
|---|

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*

Instructions are on page 2.

☐ Select if amount, legal interest, or property in demand, not including interest and costs, is LESS than $2,500.

☒ Select if amount, legal interest, or property in demand, not including interest and costs, is $2,500 or MORE.

☐ Select if claiming other relief in addition to, or in place of, money or damages.

**TO: Any proper officer**
By authority of the State of Connecticut, you are hereby commanded to make due and legal service of this summons and attached complaint.

| Address of court clerk *(Number, street, town and zip code)* | Telephone number of clerk | Return Date *(Must be a Tuesday)* |
|---|---|---|
| 1061 MAIN STREET, BRIDGEPORT, CT 06601 | ( 203 )  579 – 6527 | 03/16/2021 |

| ☒ Judicial District | G.A. | At *(City/Town)* | Case type code *(See list on page 2)* | |
|---|---|---|---|---|
| ☐ Housing Session | Number: | **BRIDGEPORT** | Major: **T** | Minor: **20** |

**For the plaintiff(s) enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(if attorney or law firm)* |
|---|---|
| Joseph R. Rossetti, Moore, O'Brien & Foti, 891 Straits Turnpike, Middlebury, CT 06762 | 430809 |

| Telephone number | Signature of plaintiff *(if self-represented)* |
|---|---|
| ( 203 )  272 – 5881 | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book.   ☒ Yes  ☐ No | E-mail address for delivery of papers under Section 10-13 of the Connecticut Practice Book *(if agreed)* GMOORE@MOJYLAW.COM |
|---|---|

| Parties | Name *(Last, First, Middle Initial)* and address of each party *(Number; street; P.O. Box; town; state; zip; country, if not USA)* | |
|---|---|---|
| **First plaintiff** | Name: BRAYBOY, TANEQUA MONIQUE, CO-ADMINISTRATOR OF THE ESTATE OF CALI DREAM FRED<br>Address: 72 SHERMAN PARK CIRCLE, BRIDGEPORT, CT 06608 | P-01 |
| **Additional plaintiff** | Name: FRED, MICKEY, CO-ADMINISTRATOR OF THE ESTATE OF CALI DREAM FRED<br>Address: 72 SHERMAN PARK CIRCLE, BRIDGEPORT, CT 06608 | P-02 |
| **First defendant** | Name: FISHER-PRICE, INC.      636 GIRARD AVENUE, EAST AURORA, NY 14052<br>Address: C/O of the Secretary, 636 Girard Avenue, East Aurora, NY 14062 | D-01 |
| **Additional defendant** | Name: MATTEL, INC.      333 CONTINENTAL BOULEVARD, EL SEGUNDO, CA 90245<br>Address: C/O of the Secretary, 333 Continental Boulevard, El Segundo, CA 90245 | D-02 |
| **Additional defendant** | Name: WALMART INC.      702 SW 8TH STREET, BENTONVILLE, AR 72716<br>Address: Agent for Service: C T Corporation System, 67 Burnside Avenue, East Hartford, CT 06108 | D-03 |
| **Additional defendant** | Name: WAL-MART STORES EAST, INC.  702 SW 8TH STREET, BENTONVILLE, AR 72716<br>Address: Agent for Service: Secretary of the State, 30 Trinity Street, Hartford, CT 06106 | D-04 |

| Total number of plaintiffs: 2 | Total number of defendants: 10 | ☒ Form JD-CV-2 attached for additional parties |
|---|---|---|

## Notice to each defendant

1. **You are being sued.** This is a summons in a lawsuit. The complaint attached states the claims the plaintiff is making against you.
2. To receive further notices, you or your attorney must file an *Appearance* (form JD-CL-12) with the clerk at the address above. Generally, it must be filed on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to appear.
3. If you or your attorney do not file an *Appearance* on time, a default judgment may be entered against you. You can get an *Appearance* form at the court address above, or on-line at https://jud.ct.gov/webforms/.
4. If you believe that you have insurance that may cover the claim being made against you in this lawsuit, you should immediately contact your insurance representative. Other actions you may take are described in the Connecticut Practice Book, which may be found in a superior court law library or on-line at https://www.jud.ct.gov/pb.htm.
5. If you have questions about the summons and complaint, you should talk to an attorney.
**The court staff is not allowed to give advice on legal matters.**

| Date | Signed *(Sign and select proper box)* | ☒ Commissioner of Superior Court | Name of person signing |
|---|---|---|---|
| 02/11/2021 | | ☐ _____ Clerk | JOSEPH R. ROSSETTI |

| If this summons is signed by a Clerk: | | For Court Use Only |
|---|---|---|
| a. The signing has been done so that the plaintiff(s) will not be denied access to the courts.<br>b. It is the responsibility of the plaintiff(s) to ensure that service is made in the manner provided by law.<br>c. The court staff is not permitted to give any legal advice in connection with any lawsuit.<br>d. The Clerk signing this summons at the request of the plaintiff(s) is not responsible in any way for any errors or omissions in the summons, any allegations contained in the complaint, or the service of the summons or complaint. | | File Date |

| I certify I have read and understand the above: | Signed *(Self-represented plaintiff)* | Date | Docket Number |
|---|---|---|---|
| | | | |

| Print Form | Page 1 of 2 | Reset Form |
|---|---|---|

**CIVIL SUMMONS**
**CONTINUATION OF PARTIES**
JD-CV-2    Rev. 9-12

**STATE OF CONNECTICUT**
**SUPERIOR COURT**

First named Plaintiff *(Last, First, Middle Initial)*
**BRAYBOY, TANEQUA MONIQUE, CO-ADMINISTRATOR OF THE ESTATE OF CALI DREAM FRED**

First named Defendant *(Last, First, Middle Initial)*
**FISHER-PRICE, INC.**

## Additional Plaintiffs

| Name *(Last, First, Middle Initial, if individual)* | Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|---|
| | | 03 |
| | | 04 |
| | | 05 |
| | | 06 |
| | | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |
| | | 12 |
| | | 13 |

## Additional Defendants

| Name *(Last, First, Middle Initial, if individual)*   Address *(Number, Street, Town and Zip Code)* | CODE |
|---|---|
| **WAL-MART ASSOCIATES, INC.**        702 SW 8TH STREET, BENTONVILLE, AR 72716<br>  Agent for Service: C T Corporation System, 67 Burnside Avenue, East Hartford, CT 06108 | 05 |
| **WAL-MART STORES EAST, LIMITED PARTNERSHIP**    702 SW 8TH STREET, BENTONVILLE, AR 72716<br>  Agent for Service: C T Corporation System, 67 Burnside Avenue, East Hartford, CT 06108 | 06 |
| **WAL-MART TRANSPORTATION, LLC   702 SW 8TH STREET, BENTONVILLE, AR 72716**<br>  Agent for Service: C T Corporation System, 67 Burnside Avenue, East Hartford, CT 06108 | 07 |
| **WAL-MART TRS, LLC**            702 SW 8TH STREET, BENTONVILLE, AR 72716<br>  Agent for Service: C T Corporation System, 67 Burnside Avenue, East Hartford, CT 06108 | 08 |
| **WAL-MART.COM USA, LLC**          850 CHERRY AVENUE, SAN BRUNO, CA 94066<br>  Agent for Service: C T Corporation System, 67 Burnside Avenue, East Hartford, CT 06108 | 09 |
| **FORD, RACHEL (WAL-MART MANAGER)**<br>**WALMART, 465 BRIDGEPORT AVENUE, SHELTON, CT 06484** | 10 |
| | 11 |

| | | *FOR COURT USE ONLY - File Date* |
|---|---|---|
| | 12 | |
| | 13 | |
| | 14 | Docket number |

**CIVIL SUMMONS-Continuation**

| | | |
|---|---|---|
| **RETURN DATE: March 16, 2021** | : | **SUPERIOR COURT** |
| | | |
| **TANEQUA MONIQUE BRAYBOY and** | : | **J.D. OF FAIRFIELD** |
| **MICKEY FRED, CO-ADMINISTRATORS** | : | |
| **OF THE ESTATE OF** | : | |
| **CALI DREAM FRED,** | : | |
| **TANEQUA MONIQUE BRAYBOY, individually,** | : | |
| **and MICKEY FRED, individually** | : | |
| | : | |
| | : | |
| **V.** | : | **AT BRIDGEPORT** |
| | : | |
| **FISHER-PRICE, INC.; MATTEL, INC.;** | : | |
| **WAL-MART, INC.; WAL-MART** | : | |
| **ASSOCIATES, INC.; WAL-MART** | : | |
| **TRANSPORTATION, LLC;** | : | |
| **WAL-MART STORES EAST, LIMITED** | : | |
| **PARTNERSHIP; WAL-MART CO. USA, LLC;** | : | |
| **WAL-MART REALTY CO.;** | : | |
| **WAL-MART TRS, LLC; and RACHEL FORD** | : | **FEBRUARY 11, 2020** |

## COMPLAINT

**FIRST COUNT: Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali Dream Fred v. Fisher-Price, Inc.- (Product Liability)**

1.     On March 31, 2019, **CALI DREAM FRED** lost her life.  On June 6, 2019 **TANEQUA MONIQUE BRAYBOY** and **MICKEY FRED** were appointed **CO-ADMINISTRATORS of the Estate of CALI DREAM FRED** in the District of Bridgeport, Probate Court No. PD48, and are duly authorized to act in that capacity.

2.     This action is brought as a "product liability claim" within the meaning of that term as described in section 52-572m(b) of the Connecticut General Statutes and

pursuant to and in accordance with the terms and provisions of the Connecticut "Product Liability Law" sections 52-572m through 52-572r of the Connecticut General Statutes.

3.     At all times mentioned herein, the defendant, **FISHER-PRICE, INC.**, was a corporation organized to do business in the State of New York with a principal place of business located at 636 Girard Avenue, East Aurora, NY 14052.

4.     At all times relevant hereto, the defendant was engaged in the business of designing, manufacturing, distributing and/or selling toys, family products, and child products including, but not limited to, the "Auto Rock 'n Play Sleeper", hereinafter referred to as the "Rock 'n Play".

5.     The manufacture, distribution and/or sale of the Rock 'n Play by the defendant was done with the reasonable expectation that said product was to be used or consumed in this State and/or was so used within the meaning of Connecticut General Statutes section 52-572m, et seq.

6.     The subject Rock 'n Play was purchased in a retail setting at the Wal-Mart Store # 2163 located at 465 Bridgeport Avenue in Shelton, Connecticut.

7.     The subject Rock 'n Play was purchased as a product intended to be used for its marketed and designed purpose: child rest, relaxation, placement, sleep, and/or sitting.

2

8.    The defendant, **FISHER-PRICE, INC.**, first introduced the Rock 'n Play line of products in or around 2009.

9.    Since the defendant introduced the Rock 'n Play into the marketplace, it had advertised and represented to its customers that the Rock 'n Play products were a safe and convenient baby product. It was represented and marketed that: "The inclined seat helps your baby sleep all night", "Baby can sleep at a comfortable **incline** all night long", "This sleeper **rocks, hands free!**", "This sleeper helps give your little one the customized soothing motions he or she loves, so you both can get some much needed shut-eye", "Whether they need just a quick snooze or are ready to settle in for the night the Rock 'n Play sleeper's comfortable, restful environment and dual autorocking settings help teeny-tiny ones wind down and relax with a consistent routine", "Inclined sleeper designed for all-night sleep", "Baby can sleep at a comfy incline **all night long!**"

10.    The Rock 'n Play was marketed and represented as a product safe and suitable for use with infant aged children.

11.    On March 31, 2019, the plaintiff was placed in the subject Rock 'n Play sleeper for rest while in a state of good health and liveliness.

12.    On March 31, 2019, the plaintiff was later found unresponsive while still lying in the subject Rock 'n Play. The plaintiff was ultimately pronounced dead on March 31, 2019 at 5:52 a.m. She was two months, five days old at the time of her death.

**MOORE, O'BRIEN & FOTI**   •   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

13.     Unknown to the plaintiff and her family, dozens of infants had previously died as a result of the dangerous and defective condition of the Rock 'n Play.

14.     The defendant had knowledge of the dangerous and defective nature of the Rock 'n Play prior to the plaintiff's death.

15.     The defendant had been put on notice of other infant deaths prior to that of the plaintiff.

16.     The defendant had been urged to stop selling and/or recall the Rock 'n Play prior to the plaintiff's death, yet failed to do so.

17.     The line of Rock 'n Play products was not recalled until after more than thirty infants died, such as the plaintiff, on April 12, 2019, less than two weeks after the plaintiff's death.

18.     The design, construction, and implementation of the Rock 'n Play was dangerous and defective in one or more of the following ways:

a.     The Rock 'n Play incorporated a dangerous and/or defective design which was not flat and forced an infant to sleep in an "L" shape with the knees flexed up toward the abdomen;

b.     The Rock 'n Play held infants in an inclined position which allowed their head to roll downward and to the side- closing off the airway;

c.     The Rock 'n Play was soft and plush rather than firm;

4

d.     The padding utilized and/or incorporated in the Rock 'n Play created a suffocation risk when infants turn their head;

e.     It allowed and/or caused infants to roll from their back to their stomach or side while unrestrained; and,

f.     The Rock 'n Play was marketed as a sleeper, when in fact it was unsuitable and unsafe for overnight or prolonged sleep.

19.     As a result of the defective condition of the defendant's product(s), specifically the Rock 'n Play sleeper, the deceased plaintiff, **CALI DREAM FRED**, suffered the following injuries and losses:

a.     Positional asphyxiation;

b.     Suffocation and hypoxemia;

c.     Anoxic injury;

d.     Death; and,

e.     Pre-death pain and suffering both mental and physical.

20.     As a further result of the defective condition of the defendant's product(s), specifically the Rock 'n Play, the plaintiff was forced to spend large sums of money for hospital and emergent medical care, and funeral expenses.

**MOORE, O'BRIEN & FOTI**  •  *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE  •  MIDDLEBURY, CT 06762  •  TEL. (203) 272-5881  •  JURIS NO. 408519

21.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered the loss of life itself, and is thus unable to participate in and enjoy any activities of life.

22.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered a loss of future earning capacity due to her death.

23.     At the time the defendant manufactured, distributed and/or sold the product(s) which is the subject of this lawsuit, it was engaged in the business of selling infant, child, and family products, such as the Rock 'n Play sleeper and was a "product seller" within the meaning of section 52-572m of the Connecticut General Statutes.

24.     These defects caused the injuries, death, and losses for which the plaintiff seeks compensation.

25.     These defects existed at the time the defendant sold the product.

26.     At all times mentioned herein, the defendant's product(s) was/were without substantial change from the condition in which it was manufactured, distributed and/or sold by the defendant.

27.     At all times mentioned herein, the subject Rock 'n Play was used as a sleeper in a foreseeable manner and was done so without modification, alteration, or disruption from its original factory design and production.

6

28.    The plaintiff's injuries and losses described above were also caused by the negligence of the defendant in one or more of the following ways:

a.    It failed to properly research the design of the Rock 'n Play prior to its development and sale;

b.    It failed to properly inspect the Rock 'n Play;

c.    It failed to properly test the Rock 'n Play;

d.    The Rock 'n Play incorporated a dangerous, unsafe, and/or defective design;

e.    The Rock 'n Play was manufactured in a dangerous, unsafe, and/or defective way;

f.    The Rock 'n Play incorporated several components and/or characteristics which led to infant death, such as that of the plaintiff;

g.    It failed to adequately warn the intended users of the Rock 'n Play, of its dangerous condition(s);

h.    It failed to provide adequate instructions for the Rock 'n Play's safe use;

i.    It failed to provide adequate assembly and/or use instructions and/or failed to adequately warn intended users of the risk of the Rock 'n Play causing infant injury/death if it was not assembled/used properly;

j.    It failed to identify and/or remove dangerous and/or defective Rock 'n Play from its product line when it knew or should have known that said Rock 'n

7

Play would likely be purchased by customers and pose a dangerous condition that can lead to infant injury/death;

k.    It failed to conduct investigations, testing, or redesign the Rock 'n Play after infant injury/death was first reported to it;

l.    It failed to recall the Rock 'n Play in a timely manner;

m.    It failed to sell, provide, and/or package the Rock 'n Play with informative packaging and/or materials;

n.    It failed to counsel, instruct, inform, and/or teach its customers on proper assembly, installation, application, and/or usage techniques for the Rock 'n Play; and,

o.    It failed to verify the safety of the Rock 'n Play it sold both prior to and during its sale of the item.

29.    In accordance with <u>Bifolck v. Philip Morris, Inc.</u>, 324 Conn. 402 (2016), the plaintiff alleges that the defendant's product is claimed to be unreasonably dangerous under the "risk utility test" because:

a.    A reasonable alternative design could have reduced or avoided the danger; and

8

b.   The design of the product marketed is manifestly unreasonable in that the risk of harm from the product so clearly exceeds its utility that a reasonable, informed consumer would not purchase the product.

30.   The defendant also impliedly warranted that the product was of merchantable quality.

31.   The defendant breached this implied warranty of merchantability.

32.   As a result of the defendant's breach of this implied warranty of merchantability, the plaintiff suffered the injuries, death, and losses more fully described above.

33.   The defendant also expressly warranted that the product(s) was/were fit for its ordinary purpose and safe for its intended uses.

34.   The plaintiff relied upon the express warranties made by the defendant.

35.   The defendant breached these express warranties.

36.   As a result of the defendant's breach of these express warranties, the plaintiff suffered the injuries and losses more fully described above.

9

**SECOND COUNT: Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali Dream Fred v. Fisher-Price, Inc.- (Recklessness Pursuant to C.G.S. 52-240b)**

1-36.    Paragraphs 1-36 of the First Count are hereby incorporated by reference and made corresponding paragraphs of this, the Second Count, as though fully set forth herein.

37.    The defendant, **FISHER-PRICE, INC.**, acted with reckless disregard for the safety of customers and/or product users, such as the plaintiff, to whom its Rock 'n Play was promoted and sold for use, and as a direct and proximate consequence of **FISHER-PRICE, INC.'s** reckless disregard for the safety of its customers and/or product users, the plaintiff is entitled to punitive damages pursuant to C.G.S. Sec. 52-240b.

**THIRD COUNT:**
**Tanequa Monique Brayboy v. Fisher-Price, Inc.- (Loss of Consortium)**

1-36.    Paragraphs 1 through 36 of the First Count are hereby incorporated and made paragraphs 1 through 36 of this Third Count as if fully set forth herein.

37.    At all relevant times, the plaintiff, **TANEQUA BRAYBOY**, was the lawful mother of the plaintiff, **CALI DREAM FRED**.

38.    As a result of the conduct of the defendant, **FISHER-PRICE, INC.**, the plaintiff, **TANEQUA BRAYBOY**, has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

10

**FOURTH COUNT: Mickey Fred v. Fisher-Price, Inc.- (Loss of Consortium)**

1-36.    Paragraphs 1 through 36 of the First Count are hereby incorporated and made paragraphs 1 through 36 of this Fourth Count as if fully set forth herein.

37.    At all relevant times, the plaintiff, **MICKEY FRED**, was the lawful father of the plaintiff, **CALI DREAM FRED**.

38.    As a result of the conduct of the defendant, **FISHER-PRICE, INC.,** the plaintiff, **MICKEY FRED,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**FIFTH COUNT: Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali Dream Fred v. Mattel, Inc.- (Product Liability)**

1.    On March 31, 2019, **CALI DREAM FRED** lost her life.  On June 6, 2019 **TANEQUA MONIQUE BRAYBOY** and **MICKEY FRED** were appointed **CO-ADMINISTRATORS of the Estate of CALI DREAM FRED** in the District of Bridgeport, Probate Court No. PD48, and are duly authorized to act in that capacity.

2.    This action is brought as a "product liability claim" within the meaning of that term as described in section 52-572m(b) of the Connecticut General Statutes and pursuant to and in accordance with the terms and provisions of the Connecticut "Product Liability Law" sections 52-572m through 52-572r of the Connecticut General Statutes.

**MOORE, O'BRIEN & FOTI**   ⋆   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   ⋆   MIDDLEBURY, CT 06762   ⋆   TEL. (203) 272-5881   ⋆   JURIS NO. 408519

3.     At all times mentioned herein, the defendant, **MATTEL, INC**., was a corporation organized to do business in the State of Delaware with a principal place of business located at 333 Continental Boulevard, El Segundo, California 90245.

4.     At all times relevant hereto, the defendant was engaged in the business of designing, manufacturing, distributing and/or selling toys, family products, and child products including, but not limited to, the "Auto Rock 'n Play Sleeper", hereinafter referred to as the "Rock 'n Play".

5.     The manufacture, distribution and/or sale of the Rock 'n Play by the defendant was done with the reasonable expectation that said product was to be used or consumed in this State and/or was so used within the meaning of Connecticut General Statutes section 52-572m, et seq.

6.     The subject Rock 'n Play was purchased in a retail setting at the Wal-Mart Store # 2163 located at 465 Bridgeport Avenue in Shelton, Connecticut.

7.     The subject Rock 'n Play was purchased as a product intended to be used for its marketed and designed purpose: child rest, relaxation, placement, sleep, and/or sitting.

8.     The defendant, **MATTEL, INC**., first introduced the Rock 'n Play line of products in or around 2009.

12

9.     Since the defendant introduced the Rock 'n Play into the marketplace, it had advertised and represented to its customers that the Rock 'n Play products were a safe and convenient baby product. It was represented and marketed that: "The inclined seat helps your baby sleep all night", "Baby can sleep at a comfortable **incline** all night long", "This sleeper **rocks, hands free!**", "This sleeper helps give your little one the customized soothing motions he or she loves, so you both can get some much needed shut-eye", "Whether they need just a quick snooze or are ready to settle in for the night the Rock 'n Play sleeper's comfortable, restful environment and dual autorocking settings help teeny-tiny ones wind down and relax with a consistent routine", "Inclined sleeper designed for all-night sleep", "Baby can sleep at a comfy incline **all night long**!"

10.     The Rock 'n Play was marketed and represented as a product safe and suitable for use with infant aged children.

11.     On March 31, 2019, the plaintiff was placed in the subject Rock 'n Play sleeper for rest while in a state of good health and liveliness.

12.     On March 31, 2019, the plaintiff was later found unresponsive while still lying in the subject Rock 'n Play. The plaintiff was ultimately pronounced dead on March 31, 2019 at 5:52 a.m. She was two months, five days old at the time of her death.

13.     Unknown to the plaintiff and her family, dozens of infants had previously died as a result of the dangerous and defective condition of the Rock 'n Play.

13

14.     The defendant had knowledge of the dangerous and defective nature of the Rock 'n Play prior to the plaintiff's death.

15.     The defendant had been put on notice of other infant deaths prior to that of the plaintiff.

16.     The defendant had been urged to stop selling and/or recall the Rock 'n Play prior to the plaintiff's death, yet failed to do so.

17.     The line of Rock 'n Play products was not recalled until after more than thirty infants died, such as the plaintiff, on April 12, 2019, less than two weeks after the plaintiff's death.

18.     The design, construction, and implementation of the Rock 'n Play was dangerous and defective in one or more of the following ways:

a.      The Rock 'n Play incorporated a dangerous and/or defective design which was not flat and forced an infant to sleep in an "L" shape with the knees flexed up toward the abdomen;

b.      The Rock 'n Play held infants in an inclined position which allowed their head to roll downward and to the side- closing off the airway;

c.      The Rock 'n Play was soft and plush rather than firm;

d.      The padding utilized and/or incorporated in the Rock 'n Play created a suffocation risk when infants turn their head;

14

e.      It allowed and/or caused infants to roll from their back to their stomach or side while unrestrained; and,

f.      The Rock 'n Play was marketed as a sleeper, when in fact it was unsuitable and unsafe for overnight or prolonged sleep.

19.     As a result of the defective condition of the defendant's product(s), specifically the Rock 'n Play sleeper, the deceased plaintiff, **CALI DREAM FRED**, suffered the following injuries and losses:

a.      Positional asphyxiation;

b.      Suffocation and hypoxemia;

c.      Anoxic injury;

d.      Death; and,

e.      Pre-death pain and suffering both mental and physical.

20.     As a further result of the defective condition of the defendant's product(s), specifically the Rock 'n Play, the plaintiff was forced to spend large sums of money for hospital and emergent medical care, and funeral expenses.

21.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered the loss of life itself, and is thus unable to participate in and enjoy any activities of life.

15

22.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered a loss of future earning capacity due to her death.

23.     At the time the defendant manufactured, distributed and/or sold the product(s) which is the subject of this lawsuit, it was engaged in the business of selling infant, child, and family products, such as the Rock 'n Play sleeper and was a "product seller" within the meaning of section 52-572m of the Connecticut General Statutes.

24.     These defects caused the injuries, death, and losses for which the plaintiff seeks compensation.

25.     These defects existed at the time the defendant sold the product.

26.     At all times mentioned herein, the defendant's product(s) was/were without substantial change from the condition in which it was manufactured, distributed and/or sold by the defendant.

27.     At all times mentioned herein, the subject Rock 'n Play was used as a sleeper in a foreseeable manner and was done so without modification, alteration, or disruption from its original factory design and production.

28.     The plaintiff's injuries and losses described above were also caused by the negligence of the defendant in one or more of the following ways:

a.     It failed to properly research the design of the Rock 'n Play prior to its development and sale;

16

b.      It failed to properly inspect the Rock 'n Play;

c.      It failed to properly test the Rock 'n Play;

d.      The Rock 'n Play incorporated a dangerous, unsafe, and/or defective design;

e.      The Rock 'n Play was manufactured in a dangerous, unsafe, and/or defective way;

f.      The Rock 'n Play incorporated several components and/or characteristics which led to infant death, such as that of the plaintiff;

g.      It failed to adequately warn the intended users of the Rock 'n Play, of its dangerous condition(s);

h.      It failed to provide adequate instructions for the Rock 'n Play's safe use;

i.      It failed to provide adequate assembly and/or use instructions and/or failed to adequately warn intended users of the risk of the Rock 'n Play causing infant injury/death if it was not assembled/used properly;

j.      It failed to identify and/or remove dangerous and/or defective Rock 'n Play from its product line when it knew or should have known that said Rock 'n Play would likely be purchased by customers and pose a dangerous condition that can lead to infant injury/death;

k.      It failed to conduct investigations, testing, or redesign the Rock 'n Play after infant injury/death was first reported to it;

17

l.      It failed to recall the Rock 'n Play in a timely manner;

m.      It failed to sell, provide, and/or package the Rock 'n Play with informative

packaging and/or materials;

n.      It failed to counsel, instruct, inform, and/or teach its customers on proper

assembly, installation, application, and/or usage techniques for the Rock 'n

Play; and,

o.      It failed to verify the safety of the Rock 'n Play it sold both prior to and

during its sale of the item.

29.      In accordance with Bifolck v. Philip Morris, Inc., 324 Conn. 402 (2016),

the plaintiff alleges that the defendant's product is claimed to be unreasonably dangerous

under the "risk utility test" because:

a.      A reasonable alternative design could have reduced or avoided the danger;

and

b.      The design of the product marketed is manifestly unreasonable in that the

risk of harm from the product so clearly exceeds its utility that a reasonable,

informed consumer would not purchase the product.

30.      The defendant also impliedly warranted that the product was of

merchantable quality.

31.      The defendant breached this implied warranty of merchantability.

18

32.     As a result of the defendant's breach of this implied warranty of merchantability, the plaintiff suffered the injuries, death, and losses more fully described above.

33.     The defendant also expressly warranted that the product(s) was/were fit for its ordinary purpose and safe for its intended uses.

34.     The plaintiff relied upon the express warranties made by the defendant.

35.     The defendant breached these express warranties.

36.     As a result of the defendant's breach of these express warranties, the plaintiff suffered the injuries and losses more fully described above.

**SIXTH COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali Dream Fred v. Mattel, Inc.- (Recklessness Pursuant to C.G.S. 52-240b)**

1-36.     Paragraphs 1-36 of the Fifth Count are hereby incorporated by reference and made corresponding paragraphs of this, the Sixth Count, as though fully set forth herein.

37.     The defendant, **MATTEL, INC.,** acted with reckless disregard for the safety of customers and/or product users, such as the plaintiff, to whom its Rock 'n Play was promoted and sold for use, and as a direct and proximate consequence of **MATTEL, INC.'s** reckless disregard for the safety of its customers and/or product users, the plaintiff is entitled to punitive damages pursuant to C.G.S. Sec. 52-240b.

19

**SEVENTH COUNT:**
**Tanequa Monique Brayboy v. Mattel, Inc.- (Loss of Consortium)**

1-36.   Paragraphs 1 through 36 of the Fifth Count are hereby incorporated and made paragraphs 1 through 36 of this Seventh Count as if fully set forth herein.

37.   At all relevant times, the plaintiff, **TANEQUA BRAYBOY**, was the lawful mother of the plaintiff, **CALI DREAM FRED**.

38.   As a result of the conduct of the defendant, **MATTEL, INC.**, the plaintiff, **TANEQUA BRAYBOY,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**EIGHTH COUNT:   Mickey Fred v. Mattel, Inc.- (Loss of Consortium)**

1-36.   Paragraphs 1 through 36 of the Fifth Count are hereby incorporated and made paragraphs 1 through 36 of this Eighth Count as if fully set forth herein.

37.   At all relevant times, the plaintiff, **MICKEY FRED**, was the lawful father of the plaintiff, **CALI DREAM FRED**.

38.   As a result of the conduct of the defendant, **MATTEL, INC.**, the plaintiff, **MICKEY FRED,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**MOORE, O'BRIEN & FOTI**   •   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

**NINTH COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of**
**Cali Dream Fred v. Walmart Inc.- (Product Liability)**

1.      On March 31, 2019, **CALI DREAM FRED** lost her life.  On June 6, 2019

**TANEQUA MONIQUE BRAYBOY** and **MICKEY FRED** were appointed **CO-**

**ADMINISTRATORS of the Estate of CALI DREAM FRED** in the District of

Bridgeport, Probate Court No. PD48, and are duly authorized to act in that capacity.

2.      This action is brought as a "product liability claim" within the meaning of

that term as described in section 52-572m(b) of the Connecticut General Statutes and

pursuant to and in accordance with the terms and provisions of the Connecticut "Product

Liability Law" sections 52-572m through 52-572r of the Connecticut General Statutes.

3.      At all times mentioned herein, the defendant, **WALMART INC.**, was a

foreign corporation licensed to do business in the State of Connecticut.

4.      At all times relevant hereto, the defendant was engaged in the business of

designing, manufacturing, distributing and/or selling toys, family products, and child

products including, but not limited to, the "Auto Rock 'n Play Sleeper", hereinafter referred

to as the "Rock 'n Play".

5.      The manufacture, distribution and/or sale of the Rock 'n Play by the

defendant was done with the reasonable expectation that said product was to be used or

21

consumed in this State and/or was so used within the meaning of Connecticut General Statutes section 52-572m, et seq.

6.      The subject Rock 'n Play was purchased in a retail setting at the Wal-Mart Store # 2163 located at 465 Bridgeport Avenue in Shelton, Connecticut.

7.      The subject Rock 'n Play was purchased from the defendant as a product intended to be used for its marketed and designed purpose: child rest, relaxation, placement, sleep, and/or sitting.

8.      The defendants, **MATTEL, INC**. and/or **FISHER-PRICE, INC.**, first introduced the Rock 'n Play line of products in or around 2009.

9.      Since the defendant introduced the Rock 'n Play into the marketplace, it had advertised and represented to its customers that the Rock 'n Play products were a safe and convenient baby product. It was represented and marketed that: "The inclined seat helps your baby sleep all night", "Baby can sleep at a comfortable **incline** all night long", "This sleeper **rocks, hands free!**", "This sleeper helps give your little one the customized soothing motions he or she loves, so you both can get some much needed shut-eye", "Whether they need just a quick snooze or are ready to settle in for the night the Rock 'n Play sleeper's comfortable, restful environment and dual autorocking settings help teeny-tiny ones wind down and relax with a consistent routine", "Inclined sleeper designed for all-night sleep", "Baby can sleep at a comfy incline **all night long**!"

22

10.     The Rock 'n Play was marketed and represented as a product safe and suitable for use with infant aged children.

11.     On March 31, 2019, the plaintiff was placed in the subject Rock 'n Play sleeper for rest while in a state of good health and liveliness.

12.      On March 31, 2019, the plaintiff was later found unresponsive while still lying in the subject Rock 'n Play. The plaintiff was ultimately pronounced dead on March 31, 2019 at 5:52 a.m. She was two months, five days old at the time of her death.

13.     Unknown to the plaintiff and her family, dozens of infants had previously died as a result of the dangerous and defective condition of the Rock 'n Play.

14.     The defendant had knowledge of the dangerous and defective nature of the Rock 'n Play prior to the plaintiff's death.

15.     The defendant had been put on notice of other infant deaths prior to that of the plaintiff.

16.     The defendant had been urged to stop selling and/or recall the Rock 'n Play prior to the plaintiff's death, yet failed to do so.

17.     The line of Rock 'n Play products was not recalled until after more than thirty infants died, such as the plaintiff, on April 12, 2019, less than two weeks after the plaintiff's death.

MOORE, O'BRIEN & FOTI   •   ATTORNEYS AT LAW
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

18.    The design, construction, and implementation of the Rock 'n Play was dangerous and defective in one or more of the following ways:

a.    The Rock 'n Play incorporated a dangerous and/or defective design which was not flat and forced an infant to sleep in an "L" shape with the knees flexed up toward the abdomen;

b.    The Rock 'n Play held infants in an inclined position which allowed their head to roll downward and to the side- closing off the airway;

c.    The Rock 'n Play was soft and plush rather than firm;

d.    The padding utilized and/or incorporated in the Rock 'n Play created a suffocation risk when infants turn their head;

e.    It allowed and/or caused infants to roll from their back to their stomach or side while unrestrained; and,

f.    The Rock 'n Play was marketed as a sleeper, when in fact it was unsuitable and unsafe for overnight or prolonged sleep.

19.    As a result of the defective condition of the defendant's product(s), specifically the Rock 'n Play sleeper, the deceased plaintiff, **CALI DREAM FRED**, suffered the following injuries and losses:

a.    Positional asphyxiation;

b.    Suffocation and hypoxemia;

24

c.     Anoxic injury;

d.     Death; and,

e.     Pre-death pain and suffering both mental and physical.

20.     As a further result of the defective condition of the defendant's product(s), specifically the Rock 'n Play, the plaintiff was forced to spend large sums of money for hospital and emergent medical care, and funeral expenses.

21.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered the loss of life itself, and is thus unable to participate in and enjoy any activities of life.

22.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered a loss of future earning capacity due to her death.

23.     At the time the defendant manufactured, distributed and/or sold the product(s) which is the subject of this lawsuit, it was engaged in the business of selling infant, child, and family products, such as the Rock 'n Play sleeper and was a "product seller" within the meaning of section 52-572m of the Connecticut General Statutes.

24.     These defects caused the injuries, death, and losses for which the plaintiff seeks compensation.

25.     These defects existed at the time the defendant sold the product.

25

26.     At all times mentioned herein, the defendant's product(s) was/were without substantial change from the condition in which it was manufactured, distributed and/or sold by the defendant.

27.     At all times mentioned herein, the subject Rock 'n Play was used as a sleeper in a foreseeable manner and was done so without modification, alteration, or disruption from its original factory design and production.

28.     The plaintiff's injuries and losses described above were also caused by the negligence of the defendant in one or more of the following ways:

a.     It failed to properly research the design of the Rock 'n Play prior to its sale;

b.     It failed to properly inspect the Rock 'n Play;

c.     It failed to properly test the Rock 'n Play;

d.     The Rock 'n Play incorporated a dangerous, unsafe, and/or defective design;

e.     The Rock 'n Play was manufactured in a dangerous, unsafe, and/or defective way, yet still sold by the defendant;

f.     The Rock 'n Play incorporated several components and/or characteristics which led to infant death, such as that of the plaintiff;

g.     It failed to adequately warn the intended users of the Rock 'n Play, of its dangerous condition(s);

h.     It failed to provide adequate instructions for the Rock 'n Play's safe use;

26

i.     It failed to provide adequate assembly and/or use instructions and/or failed to adequately warn intended users of the risk of the Rock 'n Play causing infant injury/death if it was not assembled/used properly;

j.     It failed to identify and/or remove dangerous and/or defective Rock 'n Play from its product line when it knew or should have known that said Rock 'n Play would likely be purchased by customers and pose a dangerous condition that can lead to infant injury/death;

k.     It failed to conduct investigations, testing, or redesign the Rock 'n Play after infant injury/death was first reported to it;

l.     It failed to recall the Rock 'n Play in a timely manner;

m.     It failed to sell, provide, and/or package the Rock 'n Play with informative packaging and/or materials;

n.     It failed to counsel, instruct, inform, and/or teach its customers on proper assembly, installation, application, and/or usage techniques for the Rock 'n Play; and,

o.     It failed to verify the safety of the Rock 'n Play it sold both prior to and during its sale of the item.

27

29.     In accordance with <u>Bifolck v. Philip Morris, Inc.</u>, 324 Conn. 402 (2016), the plaintiff alleges that the defendant's product is claimed to be unreasonably dangerous under the "risk utility test" because:

    a.     A reasonable alternative design could have reduced or avoided the danger; and

    b.     The design of the product marketed is manifestly unreasonable in that the risk of harm from the product so clearly exceeds its utility that a reasonable, informed consumer would not purchase the product.

30.     The defendant also impliedly warranted that the product was of merchantable quality.

31.     The defendant breached this implied warranty of merchantability.

32.     As a result of the defendant's breach of this implied warranty of merchantability, the plaintiff suffered the injuries, death, and losses more fully described above.

33.     The defendant also expressly warranted that the product(s) was/were fit for its ordinary purpose and safe for its intended uses.

34.     The plaintiff relied upon the express warranties made by the defendant.

35.     The defendant breached these express warranties.

28

36.     As a result of the defendant's breach of these express warranties, the plaintiff suffered the injuries and losses more fully described above.

## TENTH COUNT:
### Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali Dream Fred v. Walmart Inc.- (Recklessness Pursuant to C.G.S. 52-240b)

1-36.     Paragraphs 1-36 of the Ninth Count are hereby incorporated by reference and made corresponding paragraphs of this, the Tenth Count, as though fully set forth herein.

37.     The defendant, **WALMART INC.**, acted with reckless disregard for the safety of customers and/or product users, such as the plaintiff, to whom its Rock 'n Play was promoted and sold for use, and as a direct and proximate consequence of **WALMART INC.'s** reckless disregard for the safety of its customers and/or product users, the plaintiff is entitled to punitive damages pursuant to C.G.S. Sec. 52-240b.

## ELEVENTH COUNT:
### Tanequa Monique Brayboy v. Walmart Inc.- (Loss of Consortium)

1-36.     Paragraphs 1 through 36 of the Ninth Count are hereby incorporated and made paragraphs 1 through 36 of this Eleventh Count as if fully set forth herein.

37.     At all relevant times, the plaintiff, **TANEQUA BRAYBOY**, was the lawful mother of the plaintiff, **CALI DREAM FRED**.

29

38.     As a result of the conduct of the defendant, **WALMART INC.**, the plaintiff, **TANEQUA BRAYBOY,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**TWELFTH COUNT:**          **Mickey Fred v. Walmart Inc.- (Loss of Consortium)**

1-36.    Paragraphs 1 through 36 of the Ninth Count are hereby incorporated and made paragraphs 1 through 36 of this Twelfth Count as if fully set forth herein.

37.     At all relevant times, the plaintiff, **MICKEY FRED**, was the lawful father of the plaintiff, **CALI DREAM FRED**.

38.     As a result of the conduct of the defendant, **WALMART INC.**, the plaintiff, **MICKEY FRED,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**THIRTEENTH COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of**
**Cali Dream Fred v. Wal-Mart Stores East, Inc.- (Product Liability)**

1.      On March 31, 2019, **CALI DREAM FRED** lost her life.  On June 6, 2019 **TANEQUA MONIQUE BRAYBOY** and **MICKEY FRED** were appointed **CO-ADMINISTRATORS of the Estate of CALI DREAM FRED** in the District of Bridgeport, Probate Court No. PD48, and are duly authorized to act in that capacity.

30

2.      This action is brought as a "product liability claim" within the meaning of that term as described in section 52-572m(b) of the Connecticut General Statutes and pursuant to and in accordance with the terms and provisions of the Connecticut "Product Liability Law" sections 52-572m through 52-572r of the Connecticut General Statutes.

3.      At all times mentioned herein, the defendant, **WAL-MART STORES EAST, INC.**, was a foreign corporation licensed to do business in the State of Connecticut.

4.      At all times relevant hereto, the defendant was engaged in the business of designing, manufacturing, distributing and/or selling toys, family products, and child products including, but not limited to, the "Auto Rock 'n Play Sleeper", hereinafter referred to as the "Rock 'n Play".

5.      The manufacture, distribution and/or sale of the Rock 'n Play by the defendant was done with the reasonable expectation that said product was to be used or consumed in this State and/or was so used within the meaning of Connecticut General Statutes section 52-572m, et seq.

6.      The subject Rock 'n Play was purchased in a retail setting at the Wal-Mart Store # 2163 located at 465 Bridgeport Avenue in Shelton, Connecticut.

7.      The subject Rock 'n Play was purchased from the defendant as a product intended to be used for its marketed and designed purpose: child rest, relaxation, placement, sleep, and/or sitting.

31

8.     The defendants, **MATTEL, INC**. and/or **FISHER-PRICE, INC.**, first introduced the Rock 'n Play line of products in or around 2009.

9.     Since the defendant introduced the Rock 'n Play into the marketplace, it had advertised and represented to its customers that the Rock 'n Play products were a safe and convenient baby product. It was represented and marketed that: "The inclined seat helps your baby sleep all night", "Baby can sleep at a comfortable **incline** all night long", "This sleeper **rocks, hands free!**", "This sleeper helps give your little one the customized soothing motions he or she loves, so you both can get some much needed shut-eye", "Whether they need just a quick snooze or are ready to settle in for the night the Rock 'n Play sleeper's comfortable, restful environment and dual autorocking settings help teeny-tiny ones wind down and relax with a consistent routine", "Inclined sleeper designed for all-night sleep", "Baby can sleep at a comfy incline **all night long!**"

10.    The Rock 'n Play was marketed and represented as a product safe and suitable for use with infant aged children.

11.    On March 31, 2019, the plaintiff was placed in the subject Rock 'n Play sleeper for rest while in a state of good health and liveliness.

12.    On March 31, 2019, the plaintiff was later found unresponsive while still lying in the subject Rock 'n Play. The plaintiff was ultimately pronounced dead on March 31, 2019 at 5:52 a.m. She was two months, five days old at the time of her death.

32

13.     Unknown to the plaintiff and her family, dozens of infants had previously died as a result of the dangerous and defective condition of the Rock 'n Play.

14.     The defendant had knowledge of the dangerous and defective nature of the Rock 'n Play prior to the plaintiff's death.

15.     The defendant had been put on notice of other infant deaths prior to that of the plaintiff.

16.     The defendant had been urged to stop selling and/or recall the Rock 'n Play prior to the plaintiff's death, yet failed to do so.

17.     The line of Rock 'n Play products was not recalled until after more than thirty infants died, such as the plaintiff, on April 12, 2019, less than two weeks after the plaintiff's death.

18.     The design, construction, and implementation of the Rock 'n Play was dangerous and defective in one or more of the following ways:

a.      The Rock 'n Play incorporated a dangerous and/or defective design which was not flat and forced an infant to sleep in an "L" shape with the knees flexed up toward the abdomen;

b.      The Rock 'n Play held infants in an inclined position which allowed their head to roll downward and to the side- closing off the airway;

c.      The Rock 'n Play was soft and plush rather than firm;

33

d.      The padding utilized and/or incorporated in the Rock 'n Play created a suffocation risk when infants turn their head;

e.      It allowed and/or caused infants to roll from their back to their stomach or side while unrestrained; and,

f.      The Rock 'n Play was marketed as a sleeper, when in fact it was unsuitable and unsafe for overnight or prolonged sleep.

19.    As a result of the defective condition of the defendant's product(s), specifically the Rock 'n Play sleeper, the deceased plaintiff, **CALI DREAM FRED**, suffered the following injuries and losses:

a.      Positional asphyxiation;

b.      Suffocation and hypoxemia;

c.      Anoxic injury;

d.      Death; and,

e.      Pre-death pain and suffering both mental and physical.

20.    As a further result of the defective condition of the defendant's product(s), specifically the Rock 'n Play, the plaintiff was forced to spend large sums of money for hospital and emergent medical care, and funeral expenses.

**MOORE, O'BRIEN & FOTI** • *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE • MIDDLEBURY, CT 06762 • TEL. (203) 272-5881 • JURIS NO. 408519

21.    As a further result of the defective condition of the defendant's product, the plaintiff has suffered the loss of life itself, and is thus unable to participate in and enjoy any activities of life.

22.    As a further result of the defective condition of the defendant's product, the plaintiff has suffered a loss of future earning capacity due to her death.

23.    At the time the defendant manufactured, distributed and/or sold the product(s) which is the subject of this lawsuit, it was engaged in the business of selling infant, child, and family products, such as the Rock 'n Play sleeper and was a "product seller" within the meaning of section 52-572m of the Connecticut General Statutes.

24.    These defects caused the injuries, death, and losses for which the plaintiff seeks compensation.

25.    These defects existed at the time the defendant sold the product.

26.    At all times mentioned herein, the defendant's product(s) was/were without substantial change from the condition in which it was manufactured, distributed and/or sold by the defendant.

27.    At all times mentioned herein, the subject Rock 'n Play was used as a sleeper in a foreseeable manner and was done so without modification, alteration, or disruption from its original factory design and production.

35

28.     The plaintiff's injuries and losses described above were also caused by the negligence of the defendant in one or more of the following ways:

a.      It failed to properly research the design of the Rock 'n Play prior to its sale;

b.      It failed to properly inspect the Rock 'n Play;

c.      It failed to properly test the Rock 'n Play;

d.      The Rock 'n Play incorporated a dangerous, unsafe, and/or defective design;

e.      The Rock 'n Play was manufactured in a dangerous, unsafe, and/or defective way, yet still sold by the defendant;

f.      The Rock 'n Play incorporated several components and/or characteristics which led to infant death, such as that of the plaintiff;

g.      It failed to adequately warn the intended users of the Rock 'n Play, of its dangerous condition(s);

h.      It failed to provide adequate instructions for the Rock 'n Play's safe use;

i.      It failed to provide adequate assembly and/or use instructions and/or failed to adequately warn intended users of the risk of the Rock 'n Play causing infant injury/death if it was not assembled/used properly;

j.      It failed to identify and/or remove dangerous and/or defective Rock 'n Play from its product line when it knew or should have known that said Rock 'n

36

Play would likely be purchased by customers and pose a dangerous condition that can lead to infant injury/death;

k.      It failed to conduct investigations, testing, or redesign the Rock 'n Play after infant injury/death was first reported to it;

l.      It failed to recall the Rock 'n Play in a timely manner;

m.      It failed to sell, provide, and/or package the Rock 'n Play with informative packaging and/or materials;

n.      It failed to counsel, instruct, inform, and/or teach its customers on proper assembly, installation, application, and/or usage techniques for the Rock 'n Play; and,

o.      It failed to verify the safety of the Rock 'n Play it sold both prior to and during its sale of the item.

29.      In accordance with Bifolck v. Philip Morris, Inc., 324 Conn. 402 (2016), the plaintiff alleges that the defendant's product is claimed to be unreasonably dangerous under the "risk utility test" because:

a.      A reasonable alternative design could have reduced or avoided the danger; and

37

b. The design of the product marketed is manifestly unreasonable in that the risk of harm from the product so clearly exceeds its utility that a reasonable, informed consumer would not purchase the product.

30. The defendant also impliedly warranted that the product was of merchantable quality.

31. The defendant breached this implied warranty of merchantability.

32. As a result of the defendant's breach of this implied warranty of merchantability, the plaintiff suffered the injuries, death, and losses more fully described above.

33. The defendant also expressly warranted that the product(s) was/were fit for its ordinary purpose and safe for its intended uses.

34. The plaintiff relied upon the express warranties made by the defendant.

35. The defendant breached these express warranties.

36. As a result of the defendant's breach of these express warranties, the plaintiff suffered the injuries and losses more fully described above.

38

**FOURTEENTH COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali**
**Dream Fred v. Wal-Mart Stores East, Inc.- (Recklessness Pursuant to C.G.S. 52-240b)**

1-36.    Paragraphs 1-36 of the Thirteenth Count are hereby incorporated by reference and made corresponding paragraphs of this, the Fourteenth Count, as though fully set forth herein.

37.    The defendant, **WAL-MART STORES EAST, INC.**, acted with reckless disregard for the safety of customers and/or product users, such as the plaintiff, to whom its Rock 'n Play was promoted and sold for use, and as a direct and proximate consequence of **WAL-MART STORES EAST, INC.'s** reckless disregard for the safety of its customers and/or product users, the plaintiff is entitled to punitive damages pursuant to C.G.S. Sec. 52-240b.

**FIFTEENTH COUNT:**
**Tanequa Monique Brayboy v. Wal-Mart Stores East, Inc.- (Loss of Consortium)**

1-36.    Paragraphs 1 through 36 of the Thirteenth Count are hereby incorporated and made paragraphs 1 through 36 of this Fifteenth Count as if fully set forth herein.

37.    At all relevant times, the plaintiff, **TANEQUA BRAYBOY**, was the lawful mother of the plaintiff, **CALI DREAM FRED**.

**MOORE, O'BRIEN & FOTI**   •   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

38.     As a result of the conduct of the defendant, **WAL-MART STORES EAST, INC.**, the plaintiff, **TANEQUA BRAYBOY,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**SIXTEENTH COUNT:**
**Mickey Fred v. Wal-Mart Stores East, Inc.- (Loss of Consortium)**

1-36.   Paragraphs 1 through 36 of the Thirteenth Count are hereby incorporated and made paragraphs 1 through 36 of this Sixteenth Count as if fully set forth herein.

37.     At all relevant times, the plaintiff, **MICKEY FRED**, was the lawful father of the plaintiff, **CALI DREAM FRED**.

38.     As a result of the conduct of the defendant, **WAL-MART STORES EAST, INC.**, the plaintiff, **MICKEY FRED,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**SEVENTEENTH COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali Dream Fred v. Wal-Mart Associates, Inc.- (Product Liability)**

1.      On March 31, 2019, **CALI DREAM FRED** lost her life.  On June 6, 2019 **TANEQUA MONIQUE BRAYBOY** and **MICKEY FRED** were appointed **CO-ADMINISTRATORS of the Estate of CALI DREAM FRED** in the District of Bridgeport, Probate Court No. PD48, and are duly authorized to act in that capacity.

40

2.      This action is brought as a "product liability claim" within the meaning of that term as described in section 52-572m(b) of the Connecticut General Statutes and pursuant to and in accordance with the terms and provisions of the Connecticut "Product Liability Law" sections 52-572m through 52-572r of the Connecticut General Statutes.

3.      At all times mentioned herein, the defendant, **WAL-MART ASSOCIATES, INC.**, was a foreign corporation licensed to do business in the State of Connecticut.

4.      At all times relevant hereto, the defendant was engaged in the business of designing, manufacturing, distributing and/or selling toys, family products, and child products including, but not limited to, the "Auto Rock 'n Play Sleeper", hereinafter referred to as the "Rock 'n Play".

5.      The manufacture, distribution and/or sale of the Rock 'n Play by the defendant was done with the reasonable expectation that said product was to be used or consumed in this State and/or was so used within the meaning of Connecticut General Statutes section 52-572m, et seq.

6.      The subject Rock 'n Play was purchased in a retail setting at the Wal-Mart Store # 2163 located at 465 Bridgeport Avenue in Shelton, Connecticut.

**MOORE, O'BRIEN & FOTI**  •  *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE  •  MIDDLEBURY, CT 06762  •  TEL. (203) 272-5881  •  JURIS NO. 408519

7.     The subject Rock 'n Play was purchased from the defendant as a product intended to be used for its marketed and designed purpose: child rest, relaxation, placement, sleep, and/or sitting.

8.     The defendants, **MATTEL, INC**. and/or **FISHER-PRICE, INC.**, first introduced the Rock 'n Play line of products in or around 2009.

9.     Since the defendant introduced the Rock 'n Play into the marketplace, it had advertised and represented to its customers that the Rock 'n Play products were a safe and convenient baby product. It was represented and marketed that: "The inclined seat helps your baby sleep all night", "Baby can sleep at a comfortable **incline** all night long", "This sleeper **rocks, hands free!**", "This sleeper helps give your little one the customized soothing motions he or she loves, so you both can get some much needed shut-eye", "Whether they need just a quick snooze or are ready to settle in for the night the Rock 'n Play sleeper's comfortable, restful environment and dual autorocking settings help teeny-tiny ones wind down and relax with a consistent routine", "Inclined sleeper designed for all-night sleep", "Baby can sleep at a comfy incline **all night long!**"

10.     The Rock 'n Play was marketed and represented as a product safe and suitable for use with infant aged children.

11.     On March 31, 2019, the plaintiff was placed in the subject Rock 'n Play sleeper for rest while in a state of good health and liveliness.

**MOORE, O'BRIEN & FOTI**   •   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

12.     On March 31, 2019, the plaintiff was later found unresponsive while still lying in the subject Rock 'n Play. The plaintiff was ultimately pronounced dead on March 31, 2019 at 5:52 a.m. She was two months, five days old at the time of her death.

13.     Unknown to the plaintiff and her family, dozens of infants had previously died as a result of the dangerous and defective condition of the Rock 'n Play.

14.     The defendant had knowledge of the dangerous and defective nature of the Rock 'n Play prior to the plaintiff's death.

15.     The defendant had been put on notice of other infant deaths prior to that of the plaintiff.

16.     The defendant had been urged to stop selling and/or recall the Rock 'n Play prior to the plaintiff's death, yet failed to do so.

17.     The line of Rock 'n Play products was not recalled until after more than thirty infants died, such as the plaintiff, on April 12, 2019, less than two weeks after the plaintiff's death.

18.     The design, construction, and implementation of the Rock 'n Play was dangerous and defective in one or more of the following ways:

a.      The Rock 'n Play incorporated a dangerous and/or defective design which was not flat and forced an infant to sleep in an "L" shape with the knees flexed up toward the abdomen;

43

b.     The Rock 'n Play held infants in an inclined position which allowed their head to roll downward and to the side- closing off the airway;

c.     The Rock 'n Play was soft and plush rather than firm;

d.     The padding utilized and/or incorporated in the Rock 'n Play created a suffocation risk when infants turn their head;

e.     It allowed and/or caused infants to roll from their back to their stomach or side while unrestrained; and,

f.     The Rock 'n Play was marketed as a sleeper, when in fact it was unsuitable and unsafe for overnight or prolonged sleep.

19.    As a result of the defective condition of the defendant's product(s), specifically the Rock 'n Play sleeper, the deceased plaintiff, **CALI DREAM FRED**, suffered the following injuries and losses:

a.     Positional asphyxiation;

b.     Suffocation and hypoxemia;

c.     Anoxic injury;

d.     Death; and,

e.     Pre-death pain and suffering both mental and physical.

44

20.     As a further result of the defective condition of the defendant's product(s), specifically the Rock 'n Play, the plaintiff was forced to spend large sums of money for hospital and emergent medical care, and funeral expenses.

21.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered the loss of life itself, and is thus unable to participate in and enjoy any activities of life.

22.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered a loss of future earning capacity due to her death.

23.     At the time the defendant manufactured, distributed and/or sold the product(s) which is the subject of this lawsuit, it was engaged in the business of selling infant, child, and family products, such as the Rock 'n Play sleeper and was a "product seller" within the meaning of section 52-572m of the Connecticut General Statutes.

24.     These defects caused the injuries, death, and losses for which the plaintiff seeks compensation.

25.     These defects existed at the time the defendant sold the product.

26.     At all times mentioned herein, the defendant's product(s) was/were without substantial change from the condition in which it was manufactured, distributed and/or sold by the defendant.

45

27.     At all times mentioned herein, the subject Rock 'n Play was used as a sleeper in a foreseeable manner and was done so without modification, alteration, or disruption from its original factory design and production.

28.     The plaintiff's injuries and losses described above were also caused by the negligence of the defendant in one or more of the following ways:

a.     It failed to properly research the design of the Rock 'n Play prior to its sale;

b.     It failed to properly inspect the Rock 'n Play;

c.     It failed to properly test the Rock 'n Play;

d.     The Rock 'n Play incorporated a dangerous, unsafe, and/or defective design;

e.     The Rock 'n Play was manufactured in a dangerous, unsafe, and/or defective way, yet still sold by the defendant;

f.     The Rock 'n Play incorporated several components and/or characteristics which led to infant death, such as that of the plaintiff;

g.     It failed to adequately warn the intended users of the Rock 'n Play, of its dangerous condition(s);

h.     It failed to provide adequate instructions for the Rock 'n Play's safe use;

i.     It failed to provide adequate assembly and/or use instructions and/or failed to adequately warn intended users of the risk of the Rock 'n Play causing infant injury/death if it was not assembled/used properly;

46

j.      It failed to identify and/or remove dangerous and/or defective Rock 'n Play from its product line when it knew or should have known that said Rock 'n Play would likely be purchased by customers and pose a dangerous condition that can lead to infant injury/death;

k.      It failed to conduct investigations, testing, or redesign the Rock 'n Play after infant injury/death was first reported to it;

l.      It failed to recall the Rock 'n Play in a timely manner;

m.      It failed to sell, provide, and/or package the Rock 'n Play with informative packaging and/or materials;

n.      It failed to counsel, instruct, inform, and/or teach its customers on proper assembly, installation, application, and/or usage techniques for the Rock 'n Play; and,

o.      It failed to verify the safety of the Rock 'n Play it sold both prior to and during its sale of the item.

29.     In accordance with Bifolck v. Philip Morris, Inc., 324 Conn. 402 (2016), the plaintiff alleges that the defendant's product is claimed to be unreasonably dangerous under the "risk utility test" because:

a.      A reasonable alternative design could have reduced or avoided the danger; and

47

b.    The design of the product marketed is manifestly unreasonable in that the risk of harm from the product so clearly exceeds its utility that a reasonable, informed consumer would not purchase the product.

30.    The defendant also impliedly warranted that the product was of merchantable quality.

31.    The defendant breached this implied warranty of merchantability.

32.    As a result of the defendant's breach of this implied warranty of merchantability, the plaintiff suffered the injuries, death, and losses more fully described above.

33.    The defendant also expressly warranted that the product(s) was/were fit for its ordinary purpose and safe for its intended uses.

34.    The plaintiff relied upon the express warranties made by the defendant.

35.    The defendant breached these express warranties.

36.    As a result of the defendant's breach of these express warranties, the plaintiff suffered the injuries and losses more fully described above.

48

**EIGHTEENTH COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali**
**Dream Fred v. Wal-Mart Associates, Inc.- (Recklessness Pursuant to C.G.S. 52-240b)**

1-36.    Paragraphs 1-36 of the Seventeenth Count are hereby incorporated by reference and made corresponding paragraphs of this, the Eighteenth Count, as though fully set forth herein.

37.    The defendant, **WAL-MART ASSOCIATES, INC.**, acted with reckless disregard for the safety of customers and/or product users, such as the plaintiff, to whom its Rock 'n Play was promoted and sold for use, and as a direct and proximate consequence of **WAL-MART ASSOCIATES, INC.'s** reckless disregard for the safety of its customers and/or product users, the plaintiff is entitled to punitive damages pursuant to C.G.S. Sec. 52-240b.

**NINETEENTH COUNT:**
**Tanequa Monique Brayboy v. Wal-Mart Associates, Inc.- (Loss of Consortium)**

1-36.    Paragraphs 1 through 36 of the Seventeenth Count are hereby incorporated and made paragraphs 1 through 36 of this Nineteenth Count as if fully set forth herein.

37.    At all relevant times, the plaintiff, **TANEQUA BRAYBOY**, was the lawful mother of the plaintiff, **CALI DREAM FRED**.

49

38.     As a result of the conduct of the defendant, **WAL-MART ASSOCIATES, INC.**, the plaintiff, **TANEQUA BRAYBOY,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**TWENTIETH COUNT:**
**Mickey Fred v. Wal-Mart Associates, Inc.- (Loss of Consortium)**

1-36.   Paragraphs 1 through 36 of the Seventeenth Count are hereby incorporated and made paragraphs 1 through 36 of this Twentieth Count as if fully set forth herein.

37.     At all relevant times, the plaintiff, **MICKEY FRED**, was the lawful father of the plaintiff, **CALI DREAM FRED**.

38.     As a result of the conduct of the defendant, **WAL-MART ASSOCIATES, INC.**, the plaintiff, **MICKEY FRED,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**TWENTY-FIRST COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of**
**Cali Dream Fred v. Wal-Mart Stores East, Limited Partnership- (Product Liability)**

1.     On March 31, 2019, **CALI DREAM FRED** lost her life.  On June 6, 2019 **TANEQUA MONIQUE BRAYBOY** and **MICKEY FRED** were appointed **CO-ADMINISTRATORS of the Estate of CALI DREAM FRED** in the District of Bridgeport, Probate Court No. PD48, and are duly authorized to act in that capacity.

**MOORE, O'BRIEN & FOTI**  •  *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE  •  MIDDLEBURY, CT 06762  •  TEL. (203) 272-5881  •  JURIS NO. 408519

2.      This action is brought as a "product liability claim" within the meaning of that term as described in section 52-572m(b) of the Connecticut General Statutes and pursuant to and in accordance with the terms and provisions of the Connecticut "Product Liability Law" sections 52-572m through 52-572r of the Connecticut General Statutes.

3.      At all times mentioned herein, the defendant, **WAL-MART STORES EAST, LIMITED PARTNERSHIP**, was a foreign corporation licensed to do business in the State of Connecticut.

4.      At all times relevant hereto, the defendant was engaged in the business of designing, manufacturing, distributing and/or selling toys, family products, and child products including, but not limited to, the "Auto Rock 'n Play Sleeper", hereinafter referred to as the "Rock 'n Play".

5.      The manufacture, distribution and/or sale of the Rock 'n Play by the defendant was done with the reasonable expectation that said product was to be used or consumed in this State and/or was so used within the meaning of Connecticut General Statutes section 52-572m, et seq.

6.      The subject Rock 'n Play was purchased in a retail setting at the Wal-Mart Store # 2163 located at 465 Bridgeport Avenue in Shelton, Connecticut.

**MOORE, O'BRIEN & FOTI**   •   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

7.      The subject Rock 'n Play was purchased from the defendant as a product intended to be used for its marketed and designed purpose: child rest, relaxation, placement, sleep, and/or sitting.

8.      The defendants, **MATTEL, INC**. and/or **FISHER-PRICE, INC.**, first introduced the Rock 'n Play line of products in or around 2009.

9.      Since the defendant introduced the Rock 'n Play into the marketplace, it had advertised and represented to its customers that the Rock 'n Play products were a safe and convenient baby product. It was represented and marketed that: "The inclined seat helps your baby sleep all night", "Baby can sleep at a comfortable **incline** all night long", "This sleeper **rocks, hands free!**", "This sleeper helps give your little one the customized soothing motions he or she loves, so you both can get some much needed shut-eye", "Whether they need just a quick snooze or are ready to settle in for the night the Rock 'n Play sleeper's comfortable, restful environment and dual autorocking settings help teeny-tiny ones wind down and relax with a consistent routine", "Inclined sleeper designed for all-night sleep", "Baby can sleep at a comfy incline **all night long**!"

10.     The Rock 'n Play was marketed and represented as a product safe and suitable for use with infant aged children.

11.     On March 31, 2019, the plaintiff was placed in the subject Rock 'n Play sleeper for rest while in a state of good health and liveliness.

52

12.     On March 31, 2019, the plaintiff was later found unresponsive while still lying in the subject Rock 'n Play. The plaintiff was ultimately pronounced dead on March 31, 2019 at 5:52 a.m. She was two months, five days old at the time of her death.

13.     Unknown to the plaintiff and her family, dozens of infants had previously died as a result of the dangerous and defective condition of the Rock 'n Play.

14.     The defendant had knowledge of the dangerous and defective nature of the Rock 'n Play prior to the plaintiff's death.

15.     The defendant had been put on notice of other infant deaths prior to that of the plaintiff.

16.     The defendant had been urged to stop selling and/or recall the Rock 'n Play prior to the plaintiff's death, yet failed to do so.

17.     The line of Rock 'n Play products was not recalled until after more than thirty infants died, such as the plaintiff, on April 12, 2019, less than two weeks after the plaintiff's death.

18.     The design, construction, and implementation of the Rock 'n Play was dangerous and defective in one or more of the following ways:

a.      The Rock 'n Play incorporated a dangerous and/or defective design which was not flat and forced an infant to sleep in an "L" shape with the knees flexed up toward the abdomen;

53

b.      The Rock 'n Play held infants in an inclined position which allowed their head to roll downward and to the side- closing off the airway;

c.      The Rock 'n Play was soft and plush rather than firm;

d.      The padding utilized and/or incorporated in the Rock 'n Play created a suffocation risk when infants turn their head;

e.      It allowed and/or caused infants to roll from their back to their stomach or side while unrestrained; and,

f.      The Rock 'n Play was marketed as a sleeper, when in fact it was unsuitable and unsafe for overnight or prolonged sleep.

19.     As a result of the defective condition of the defendant's product(s), specifically the Rock 'n Play sleeper, the deceased plaintiff, **CALI DREAM FRED**, suffered the following injuries and losses:

a.      Positional asphyxiation;

b.      Suffocation and hypoxemia;

c.      Anoxic injury;

d.      Death; and,

e.      Pre-death pain and suffering both mental and physical.

54

20.     As a further result of the defective condition of the defendant's product(s), specifically the Rock 'n Play, the plaintiff was forced to spend large sums of money for hospital and emergent medical care, and funeral expenses.

21.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered the loss of life itself, and is thus unable to participate in and enjoy any activities of life.

22.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered a loss of future earning capacity due to her death.

23.     At the time the defendant manufactured, distributed and/or sold the product(s) which is the subject of this lawsuit, it was engaged in the business of selling infant, child, and family products, such as the Rock 'n Play sleeper and was a "product seller" within the meaning of section 52-572m of the Connecticut General Statutes.

24.     These defects caused the injuries, death, and losses for which the plaintiff seeks compensation.

25.     These defects existed at the time the defendant sold the product.

26.     At all times mentioned herein, the defendant's product(s) was/were without substantial change from the condition in which it was manufactured, distributed and/or sold by the defendant.

55

27.    At all times mentioned herein, the subject Rock 'n Play was used as a sleeper in a foreseeable manner and was done so without modification, alteration, or disruption from its original factory design and production.

28.    The plaintiff's injuries and losses described above were also caused by the negligence of the defendant in one or more of the following ways:

a.    It failed to properly research the design of the Rock 'n Play prior to its sale;

b.    It failed to properly inspect the Rock 'n Play;

c.    It failed to properly test the Rock 'n Play;

d.    The Rock 'n Play incorporated a dangerous, unsafe, and/or defective design;

e.    The Rock 'n Play was manufactured in a dangerous, unsafe, and/or defective way, yet still sold by the defendant;

f.    The Rock 'n Play incorporated several components and/or characteristics which led to infant death, such as that of the plaintiff;

g.    It failed to adequately warn the intended users of the Rock 'n Play, of its dangerous condition(s);

h.    It failed to provide adequate instructions for the Rock 'n Play's safe use;

i.    It failed to provide adequate assembly and/or use instructions and/or failed to adequately warn intended users of the risk of the Rock 'n Play causing infant injury/death if it was not assembled/used properly;

56

j.     It failed to identify and/or remove dangerous and/or defective Rock 'n Play from its product line when it knew or should have known that said Rock 'n Play would likely be purchased by customers and pose a dangerous condition that can lead to infant injury/death;

k.    It failed to conduct investigations, testing, or redesign the Rock 'n Play after infant injury/death was first reported to it;

l.     It failed to recall the Rock 'n Play in a timely manner;

m.    It failed to sell, provide, and/or package the Rock 'n Play with informative packaging and/or materials;

n.    It failed to counsel, instruct, inform, and/or teach its customers on proper assembly, installation, application, and/or usage techniques for the Rock 'n Play; and,

o.    It failed to verify the safety of the Rock 'n Play it sold both prior to and during its sale of the item.

29.    In accordance with <u>Bifolck v. Philip Morris, Inc.</u>, 324 Conn. 402 (2016), the plaintiff alleges that the defendant's product is claimed to be unreasonably dangerous under the "risk utility test" because:

a.    A reasonable alternative design could have reduced or avoided the danger; and

57

b.      The design of the product marketed is manifestly unreasonable in that the risk of harm from the product so clearly exceeds its utility that a reasonable, informed consumer would not purchase the product.

30.     The defendant also impliedly warranted that the product was of merchantable quality.

31.     The defendant breached this implied warranty of merchantability.

32.     As a result of the defendant's breach of this implied warranty of merchantability, the plaintiff suffered the injuries, death, and losses more fully described above.

33.     The defendant also expressly warranted that the product(s) was/were fit for its ordinary purpose and safe for its intended uses.

34.     The plaintiff relied upon the express warranties made by the defendant.

35.     The defendant breached these express warranties.

36.     As a result of the defendant's breach of these express warranties, the plaintiff suffered the injuries and losses more fully described above.

58

**TWENTY-SECOND COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali**
**Dream Fred v. Wal-Mart Stores East, Limited Partnership- (Recklessness Pursuant to**
**C.G.S. 52-240b)**

1-36.   Paragraphs 1-36 of the Twenty-First Count are hereby incorporated by reference and made corresponding paragraphs of this, the Twenty- Second Count, as though fully set forth herein.

37.   The   defendant,   **WAL-MART   STORES   EAST,   LIMITED PARTNERSHIP**, acted with reckless disregard for the safety of customers and/or product users, such as the plaintiff, to whom its Rock 'n Play was promoted and sold for use, and as a direct and proximate consequence of **WAL-MART STORES EAST, LIMITED PARTNERSHIP's** reckless disregard for the safety of its customers and/or product users, the plaintiff is entitled to punitive damages pursuant to C.G.S. Sec. 52-240b.

**TWENTY-THIRD COUNT:**
**Tanequa Monique Brayboy v. Wal-Mart Stores East, Limited Partnership- (Loss of**
**Consortium)**

1-36.   Paragraphs 1 through 36 of the Twenty-First Count are hereby incorporated and made paragraphs 1 through 36 of this Twenty-Third Count as if fully set forth herein.

37.   At all relevant times, the plaintiff, **TANEQUA BRAYBOY**, was the lawful mother of the plaintiff, **CALI DREAM FRED**.

59

38.     As a result of the conduct of the defendant, **WAL-MART STORES EAST, LIMITED PARTNERSHIP**, the plaintiff, **TANEQUA BRAYBOY,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**TWENTY-FOURTH COUNT:**
**Mickey Fred v. Wal-Mart Stores East, Limited Partnership - (Loss of Consortium)**

1-36.    Paragraphs 1 through 36 of the Twenty-First Count are hereby incorporated and made paragraphs 1 through 36 of this Twenty-Fourth Count as if fully set forth herein.

37.     At all relevant times, the plaintiff, **MICKEY FRED**, was the lawful father of the plaintiff, **CALI DREAM FRED**.

38.     As a result of the conduct of the defendant, **WAL-MART STORES EAST, LIMITED PARTNERSHIP**, the plaintiff, **MICKEY FRED,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**TWENTY-FIFTH COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali Dream Fred v. Wal-Mart Transportation, LLC- (Product Liability)**

1.     On March 31, 2019, **CALI DREAM FRED** lost her life.  On June 6, 2019 **TANEQUA MONIQUE BRAYBOY** and **MICKEY FRED** were appointed **CO-ADMINISTRATORS of the Estate of CALI DREAM FRED** in the District of Bridgeport, Probate Court No. PD48, and are duly authorized to act in that capacity.

60

2.      This action is brought as a "product liability claim" within the meaning of that term as described in section 52-572m(b) of the Connecticut General Statutes and pursuant to and in accordance with the terms and provisions of the Connecticut "Product Liability Law" sections 52-572m through 52-572r of the Connecticut General Statutes.

3.      At all times mentioned herein, the defendant, **WAL-MART TRANSPORTATION, LLC**, was a foreign corporation licensed to do business in the State of Connecticut.

4.      At all times relevant hereto, the defendant was engaged in the business of designing, manufacturing, distributing and/or selling toys, family products, and child products including, but not limited to, the "Auto Rock 'n Play Sleeper", hereinafter referred to as the "Rock 'n Play".

5.      The manufacture, distribution and/or sale of the Rock 'n Play by the defendant was done with the reasonable expectation that said product was to be used or consumed in this State and/or was so used within the meaning of Connecticut General Statutes section 52-572m, et seq.

6.      The subject Rock 'n Play was purchased in a retail setting at the Wal-Mart Store # 2163 located at 465 Bridgeport Avenue in Shelton, Connecticut.

**MOORE, O'BRIEN & FOTI**   •   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

7.     The subject Rock 'n Play was purchased from the defendant as a product intended to be used for its marketed and designed purpose: child rest, relaxation, placement, sleep, and/or sitting.

8.     The defendants, **MATTEL, INC**. and/or **FISHER-PRICE, INC.**, first introduced the Rock 'n Play line of products in or around 2009.

9.     Since the defendant introduced the Rock 'n Play into the marketplace, it had advertised and represented to its customers that the Rock 'n Play products were a safe and convenient baby product. It was represented and marketed that: "The inclined seat helps your baby sleep all night", "Baby can sleep at a comfortable **incline** all night long", "This sleeper **rocks, hands free!**", "This sleeper helps give your little one the customized soothing motions he or she loves, so you both can get some much needed shut-eye", "Whether they need just a quick snooze or are ready to settle in for the night the Rock 'n Play sleeper's comfortable, restful environment and dual autorocking settings help teeny-tiny ones wind down and relax with a consistent routine", "Inclined sleeper designed for all-night sleep", "Baby can sleep at a comfy incline **all night long!**"

10.     The Rock 'n Play was marketed and represented as a product safe and suitable for use with infant aged children.

11.     On March 31, 2019, the plaintiff was placed in the subject Rock 'n Play sleeper for rest while in a state of good health and liveliness.

**MOORE, O'BRIEN & FOTI**   •   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

12.     On March 31, 2019, the plaintiff was later found unresponsive while still lying in the subject Rock 'n Play. The plaintiff was ultimately pronounced dead on March 31, 2019 at 5:52 a.m. She was two months, five days old at the time of her death.

13.     Unknown to the plaintiff and her family, dozens of infants had previously died as a result of the dangerous and defective condition of the Rock 'n Play.

14.     The defendant had knowledge of the dangerous and defective nature of the Rock 'n Play prior to the plaintiff's death.

15.     The defendant had been put on notice of other infant deaths prior to that of the plaintiff.

16.     The defendant had been urged to stop selling and/or recall the Rock 'n Play prior to the plaintiff's death, yet failed to do so.

17.     The line of Rock 'n Play products was not recalled until after more than thirty infants died, such as the plaintiff, on April 12, 2019, less than two weeks after the plaintiff's death.

18.     The design, construction, and implementation of the Rock 'n Play was dangerous and defective in one or more of the following ways:

a.     The Rock 'n Play incorporated a dangerous and/or defective design which was not flat and forced an infant to sleep in an "L" shape with the knees flexed up toward the abdomen;

63

b.   The Rock 'n Play held infants in an inclined position which allowed their head to roll downward and to the side- closing off the airway;

c.   The Rock 'n Play was soft and plush rather than firm;

d.   The padding utilized and/or incorporated in the Rock 'n Play created a suffocation risk when infants turn their head;

e.   It allowed and/or caused infants to roll from their back to their stomach or side while unrestrained; and,

f.   The Rock 'n Play was marketed as a sleeper, when in fact it was unsuitable and unsafe for overnight or prolonged sleep.

19.   As a result of the defective condition of the defendant's product(s), specifically the Rock 'n Play sleeper, the deceased plaintiff, **CALI DREAM FRED**, suffered the following injuries and losses:

a.   Positional asphyxiation;

b.   Suffocation and hypoxemia;

c.   Anoxic injury;

d.   Death; and,

e.   Pre-death pain and suffering both mental and physical.

**MOORE, O'BRIEN & FOTI**  •  *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE  •  MIDDLEBURY, CT 06762  •  TEL. (203) 272-5881  •  JURIS NO. 408519

20.     As a further result of the defective condition of the defendant's product(s), specifically the Rock 'n Play, the plaintiff was forced to spend large sums of money for hospital and emergent medical care, and funeral expenses.

21.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered the loss of life itself, and is thus unable to participate in and enjoy any activities of life.

22.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered a loss of future earning capacity due to her death.

23.     At the time the defendant manufactured, distributed and/or sold the product(s) which is the subject of this lawsuit, it was engaged in the business of selling infant, child, and family products, such as the Rock 'n Play sleeper and was a "product seller" within the meaning of section 52-572m of the Connecticut General Statutes.

24.     These defects caused the injuries, death, and losses for which the plaintiff seeks compensation.

25.     These defects existed at the time the defendant sold the product.

26.     At all times mentioned herein, the defendant's product(s) was/were without substantial change from the condition in which it was manufactured, distributed and/or sold by the defendant.

MOORE, O'BRIEN & FOTI   •   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

27.    At all times mentioned herein, the subject Rock 'n Play was used as a sleeper in a foreseeable manner and was done so without modification, alteration, or disruption from its original factory design and production.

28.    The plaintiff's injuries and losses described above were also caused by the negligence of the defendant in one or more of the following ways:

a.    It failed to properly research the design of the Rock 'n Play prior to its sale;

b.    It failed to properly inspect the Rock 'n Play;

c.    It failed to properly test the Rock 'n Play;

d.    The Rock 'n Play incorporated a dangerous, unsafe, and/or defective design;

e.    The Rock 'n Play was manufactured in a dangerous, unsafe, and/or defective way, yet still sold by the defendant;

f.    The Rock 'n Play incorporated several components and/or characteristics which led to infant death, such as that of the plaintiff;

g.    It failed to adequately warn the intended users of the Rock 'n Play, of its dangerous condition(s);

h.    It failed to provide adequate instructions for the Rock 'n Play's safe use;

i.    It failed to provide adequate assembly and/or use instructions and/or failed to adequately warn intended users of the risk of the Rock 'n Play causing infant injury/death if it was not assembled/used properly;

66

j.    It failed to identify and/or remove dangerous and/or defective Rock 'n Play from its product line when it knew or should have known that said Rock 'n Play would likely be purchased by customers and pose a dangerous condition that can lead to infant injury/death;

k.    It failed to conduct investigations, testing, or redesign the Rock 'n Play after infant injury/death was first reported to it;

l.    It failed to recall the Rock 'n Play in a timely manner;

m.    It failed to sell, provide, and/or package the Rock 'n Play with informative packaging and/or materials;

n.    It failed to counsel, instruct, inform, and/or teach its customers on proper assembly, installation, application, and/or usage techniques for the Rock 'n Play; and,

o.    It failed to verify the safety of the Rock 'n Play it sold both prior to and during its sale of the item.

29.    In accordance with <u>Bifolck v. Philip Morris, Inc.</u>, 324 Conn. 402 (2016), the plaintiff alleges that the defendant's product is claimed to be unreasonably dangerous under the "risk utility test" because:

a.    A reasonable alternative design could have reduced or avoided the danger; and

67

b.     The design of the product marketed is manifestly unreasonable in that the

risk of harm from the product so clearly exceeds its utility that a reasonable,

informed consumer would not purchase the product.

30.     The defendant also impliedly warranted that the product was of

merchantable quality.

31.     The defendant breached this implied warranty of merchantability.

32.     As a result of the defendant's breach of this implied warranty of

merchantability, the plaintiff suffered the injuries, death, and losses more fully described

above.

33.     The defendant also expressly warranted that the product(s) was/were fit for

its ordinary purpose and safe for its intended uses.

34.     The plaintiff relied upon the express warranties made by the defendant.

35.     The defendant breached these express warranties.

36.     As a result of the defendant's breach of these express warranties, the

plaintiff suffered the injuries and losses more fully described above.

MOORE, O'BRIEN & FOTI   •   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

**TWENTY-SIXTH COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali**
**Dream Fred v. Wal-Mart Transportation, LLC- (Recklessness Pursuant to C.G.S. 52-**
**240b)**

      1-36.   Paragraphs 1-36 of the Twenty-Fifth Count are hereby incorporated by reference and made corresponding paragraphs of this, the Twenty- Sixth Count, as though fully set forth herein.

      37.   The defendant, **WAL-MART TRANSPORTATION, LLC**, acted with reckless disregard for the safety of customers and/or product users, such as the plaintiff, to whom its Rock 'n Play was promoted and sold for use, and as a direct and proximate consequence of **WAL-MART TRANSPORTATION, LLC's** reckless disregard for the safety of its customers and/or product users, the plaintiff is entitled to punitive damages pursuant to C.G.S. Sec. 52-240b.

**TWENTY-SEVENTH COUNT:**
**Tanequa Monique Brayboy v. Wal-Mart Transportation, LLC- (Loss of Consortium)**

      1-36.   Paragraphs 1 through 36 of the Twenty-Fifth Count are hereby incorporated and made paragraphs 1 through 36 of this Twenty-Seventh Count as if fully set forth herein.

      37.   At all relevant times, the plaintiff, **TANEQUA BRAYBOY**, was the lawful mother of the plaintiff, **CALI DREAM FRED**.

69

38.     As  a  result  of  the  conduct  of  the  defendant,  **WAL-MART TRANSPORTATION, LLC**, the plaintiff, **TANEQUA BRAYBOY,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**TWENTY-EIGHTH COUNT:**
**Mickey Fred v. Wal-Mart Transportation, LLC- (Loss of Consortium)**

1-36.   Paragraphs 1 through 36 of the Twenty-Fifth Count are hereby incorporated and made paragraphs 1 through 36 of this Twenty-Eighth Count as if fully set forth herein.

37.     At all relevant times, the plaintiff, **MICKEY FRED**, was the lawful father of the plaintiff, **CALI DREAM FRED**.

38.     As  a  result  of  the  conduct  of  the  defendant,  **WAL-MART TRANSPORTATION, LLC**, the plaintiff, **MICKEY FRED,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**TWENTY-NINTH COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali Dream Fred v. Wal-Mart TRS, LLC- (Product Liability)**

1.      On March 31, 2019, **CALI DREAM FRED** lost her life.  On June 6, 2019 **TANEQUA MONIQUE BRAYBOY** and **MICKEY FRED** were appointed **CO-ADMINISTRATORS of the Estate of CALI DREAM FRED** in the District of Bridgeport, Probate Court No. PD48, and are duly authorized to act in that capacity.

70

2.      This action is brought as a "product liability claim" within the meaning of that term as described in section 52-572m(b) of the Connecticut General Statutes and pursuant to and in accordance with the terms and provisions of the Connecticut "Product Liability Law" sections 52-572m through 52-572r of the Connecticut General Statutes.

3.      At all times mentioned herein, the defendant, **WAL-MART TRS, LLC**, was a foreign corporation licensed to do business in the State of Connecticut.

4.      At all times relevant hereto, the defendant was engaged in the business of designing, manufacturing, distributing and/or selling toys, family products, and child products including, but not limited to, the "Auto Rock 'n Play Sleeper", hereinafter referred to as the "Rock 'n Play".

5.      The manufacture, distribution and/or sale of the Rock 'n Play by the defendant was done with the reasonable expectation that said product was to be used or consumed in this State and/or was so used within the meaning of Connecticut General Statutes section 52-572m, et seq.

6.      The subject Rock 'n Play was purchased in a retail setting at the Wal-Mart Store # 2163 located at 465 Bridgeport Avenue in Shelton, Connecticut.

7.      The subject Rock 'n Play was purchased from the defendant as a product intended to be used for its marketed and designed purpose: child rest, relaxation, placement, sleep, and/or sitting.

MOORE, O'BRIEN & FOTI    •    *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

8.      The defendants, **MATTEL, INC**. and/or **FISHER-PRICE, INC.**, first introduced the Rock 'n Play line of products in or around 2009.

9.      Since the defendant introduced the Rock 'n Play into the marketplace, it had advertised and represented to its customers that the Rock 'n Play products were a safe and convenient baby product. It was represented and marketed that: "The inclined seat helps your baby sleep all night", "Baby can sleep at a comfortable **incline** all night long", "This sleeper **rocks, hands free!**", "This sleeper helps give your little one the customized soothing motions he or she loves, so you both can get some much needed shut-eye", "Whether they need just a quick snooze or are ready to settle in for the night the Rock 'n Play sleeper's comfortable, restful environment and dual autorocking settings help teeny-tiny ones wind down and relax with a consistent routine", "Inclined sleeper designed for all-night sleep", "Baby can sleep at a comfy incline **all night long**!"

10.     The Rock 'n Play was marketed and represented as a product safe and suitable for use with infant aged children.

11.     On March 31, 2019, the plaintiff was placed in the subject Rock 'n Play sleeper for rest while in a state of good health and liveliness.

12.      On March 31, 2019, the plaintiff was later found unresponsive while still lying in the subject Rock 'n Play. The plaintiff was ultimately pronounced dead on March 31, 2019 at 5:52 a.m. She was two months, five days old at the time of her death.

72

13.     Unknown to the plaintiff and her family, dozens of infants had previously died as a result of the dangerous and defective condition of the Rock 'n Play.

14.     The defendant had knowledge of the dangerous and defective nature of the Rock 'n Play prior to the plaintiff's death.

15.     The defendant had been put on notice of other infant deaths prior to that of the plaintiff.

16.     The defendant had been urged to stop selling and/or recall the Rock 'n Play prior to the plaintiff's death, yet failed to do so.

17.     The line of Rock 'n Play products was not recalled until after more than thirty infants died, such as the plaintiff, on April 12, 2019, less than two weeks after the plaintiff's death.

18.     The design, construction, and implementation of the Rock 'n Play was dangerous and defective in one or more of the following ways:

a.      The Rock 'n Play incorporated a dangerous and/or defective design which was not flat and forced an infant to sleep in an "L" shape with the knees flexed up toward the abdomen;

b.      The Rock 'n Play held infants in an inclined position which allowed their head to roll downward and to the side- closing off the airway;

c.      The Rock 'n Play was soft and plush rather than firm;

73

d.      The padding utilized and/or incorporated in the Rock 'n Play created a

        suffocation risk when infants turn their head;

e.      It allowed and/or caused infants to roll from their back to their stomach or

        side while unrestrained; and,

f.      The Rock 'n Play was marketed as a sleeper, when in fact it was unsuitable

        and unsafe for overnight or prolonged sleep.

19.     As a result of the defective condition of the defendant's product(s),

specifically the Rock 'n Play sleeper, the deceased plaintiff, **CALI DREAM FRED**,

suffered the following injuries and losses:

a.      Positional asphyxiation;

b.      Suffocation and hypoxemia;

c.      Anoxic injury;

d.      Death; and,

e.      Pre-death pain and suffering both mental and physical.

20.     As a further result of the defective condition of the defendant's product(s),

specifically the Rock 'n Play, the plaintiff was forced to spend large sums of money for

hospital and emergent medical care, and funeral expenses.

74

21.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered the loss of life itself, and is thus unable to participate in and enjoy any activities of life.

22.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered a loss of future earning capacity due to her death.

23.     At the time the defendant manufactured, distributed and/or sold the product(s) which is the subject of this lawsuit, it was engaged in the business of selling infant, child, and family products, such as the Rock 'n Play sleeper and was a "product seller" within the meaning of section 52-572m of the Connecticut General Statutes.

24.     These defects caused the injuries, death, and losses for which the plaintiff seeks compensation.

25.     These defects existed at the time the defendant sold the product.

26.     At all times mentioned herein, the defendant's product(s) was/were without substantial change from the condition in which it was manufactured, distributed and/or sold by the defendant.

27.     At all times mentioned herein, the subject Rock 'n Play was used as a sleeper in a foreseeable manner and was done so without modification, alteration, or disruption from its original factory design and production.

75

28.     The plaintiff's injuries and losses described above were also caused by the negligence of the defendant in one or more of the following ways:

a.      It failed to properly research the design of the Rock 'n Play prior to its sale;

b.      It failed to properly inspect the Rock 'n Play;

c.      It failed to properly test the Rock 'n Play;

d.      The Rock 'n Play incorporated a dangerous, unsafe, and/or defective design;

e.      The Rock 'n Play was manufactured in a dangerous, unsafe, and/or defective way, yet still sold by the defendant;

f.      The Rock 'n Play incorporated several components and/or characteristics which led to infant death, such as that of the plaintiff;

g.      It failed to adequately warn the intended users of the Rock 'n Play, of its dangerous condition(s);

h.      It failed to provide adequate instructions for the Rock 'n Play's safe use;

i.      It failed to provide adequate assembly and/or use instructions and/or failed to adequately warn intended users of the risk of the Rock 'n Play causing infant injury/death if it was not assembled/used properly;

j.      It failed to identify and/or remove dangerous and/or defective Rock 'n Play from its product line when it knew or should have known that said Rock 'n

76

Play would likely be purchased by customers and pose a dangerous condition that can lead to infant injury/death;

k.    It failed to conduct investigations, testing, or redesign the Rock 'n Play after infant injury/death was first reported to it;

l.    It failed to recall the Rock 'n Play in a timely manner;

m.    It failed to sell, provide, and/or package the Rock 'n Play with informative packaging and/or materials;

n.    It failed to counsel, instruct, inform, and/or teach its customers on proper assembly, installation, application, and/or usage techniques for the Rock 'n Play; and,

o.    It failed to verify the safety of the Rock 'n Play it sold both prior to and during its sale of the item.

29.    In accordance with <u>Bifolck v. Philip Morris, Inc.</u>, 324 Conn. 402 (2016), the plaintiff alleges that the defendant's product is claimed to be unreasonably dangerous under the "risk utility test" because:

a.    A reasonable alternative design could have reduced or avoided the danger; and

77

b.    The design of the product marketed is manifestly unreasonable in that the risk of harm from the product so clearly exceeds its utility that a reasonable, informed consumer would not purchase the product.

30.    The defendant also impliedly warranted that the product was of merchantable quality.

31.    The defendant breached this implied warranty of merchantability.

32.    As a result of the defendant's breach of this implied warranty of merchantability, the plaintiff suffered the injuries, death, and losses more fully described above.

33.    The defendant also expressly warranted that the product(s) was/were fit for its ordinary purpose and safe for its intended uses.

34.    The plaintiff relied upon the express warranties made by the defendant.

35.    The defendant breached these express warranties.

36.    As a result of the defendant's breach of these express warranties, the plaintiff suffered the injuries and losses more fully described above.

**MOORE, O'BRIEN & FOTI**  •  *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE  •  MIDDLEBURY, CT 06762  •  TEL. (203) 272-5881  •  JURIS NO. 408519

**THIRTIETH COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali Dream Fred v. Wal-Mart TRS, LLC- (Recklessness Pursuant to C.G.S. 52-240b)**

1-36.   Paragraphs 1-36 of the Twenty-Ninth Count are hereby incorporated by reference and made corresponding paragraphs of this, the Thirtieth Count, as though fully set forth herein.

37.   The defendant, **WAL-MART TRS, LLC**, acted with reckless disregard for the safety of customers and/or product users, such as the plaintiff, to whom its Rock 'n Play was promoted and sold for use, and as a direct and proximate consequence of **WAL-MART TRS, LLC's** reckless disregard for the safety of its customers and/or product users, the plaintiff is entitled to punitive damages pursuant to C.G.S. Sec. 52-240b.

**THIRTY-FIRST COUNT:**
**Tanequa Monique Brayboy v. Wal-Mart TRS, LLC- (Loss of Consortium)**

1-36.   Paragraphs 1 through 36 of the Twenty-Ninth Count are hereby incorporated and made paragraphs 1 through 36 of this Thirty-First Count as if fully set forth herein.

37.   At all relevant times, the plaintiff, **TANEQUA BRAYBOY**, was the lawful mother of the plaintiff, **CALI DREAM FRED**.

79

38.    As a result of the conduct of the defendant, **WAL-MART TRS, LLC**, the plaintiff, **TANEQUA BRAYBOY,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**THIRTY-SECOND COUNT:**
**Mickey Fred v. Wal-Mart TRS, LLC- (Loss of Consortium)**

1-36.    Paragraphs 1 through 36 of the Twenty-Ninth Count are hereby incorporated and made paragraphs 1 through 36 of this Thirty-Second Count as if fully set forth herein.

37.    At all relevant times, the plaintiff, **MICKEY FRED**, was the lawful father of the plaintiff, **CALI DREAM FRED**.

38.    As a result of the conduct of the defendant, **WAL-MART TRS, LLC**, the plaintiff, **MICKEY FRED,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**THIRTY-THIRD COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of**
**Cali Dream Fred v. Wal-Mart.com USA, LLC.- (Product Liability)**

1.    On March 31, 2019, **CALI DREAM FRED** lost her life.  On June 6, 2019 **TANEQUA MONIQUE BRAYBOY** and **MICKEY FRED** were appointed **CO-ADMINISTRATORS of the Estate of CALI DREAM FRED** in the District of Bridgeport, Probate Court No. PD48, and are duly authorized to act in that capacity.

**MOORE, O'BRIEN & FOTI**  •  *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE  •  MIDDLEBURY, CT 06762  •  TEL. (203) 272-5881  •  JURIS NO. 408519

2.      This action is brought as a "product liability claim" within the meaning of that term as described in section 52-572m(b) of the Connecticut General Statutes and pursuant to and in accordance with the terms and provisions of the Connecticut "Product Liability Law" sections 52-572m through 52-572r of the Connecticut General Statutes.

3.      At all times mentioned herein, the defendant, **WAL-MART.COM USA, LLC,** was a foreign corporation licensed to do business in the State of Connecticut.

4.      At all times relevant hereto, the defendant was engaged in the business of designing, manufacturing, distributing and/or selling toys, family products, and child products including, but not limited to, the "Auto Rock 'n Play Sleeper", hereinafter referred to as the "Rock 'n Play".

5.      The manufacture, distribution and/or sale of the Rock 'n Play by the defendant was done with the reasonable expectation that said product was to be used or consumed in this State and/or was so used within the meaning of Connecticut General Statutes section 52-572m, et seq.

6.      The subject Rock 'n Play was purchased in a retail setting at the Wal-Mart Store # 2163 located at 465 Bridgeport Avenue in Shelton, Connecticut.

7.      The subject Rock 'n Play was purchased from the defendant as a product intended to be used for its marketed and designed purpose: child rest, relaxation, placement, sleep, and/or sitting.

81

8.      The defendants, **MATTEL, INC**. and/or **FISHER-PRICE, INC**., first introduced the Rock 'n Play line of products in or around 2009.

9.      Since the defendant introduced the Rock 'n Play into the marketplace, it had advertised and represented to its customers that the Rock 'n Play products were a safe and convenient baby product. It was represented and marketed that: "The inclined seat helps your baby sleep all night", "Baby can sleep at a comfortable **incline** all night long", "This sleeper **rocks, hands free!**", "This sleeper helps give your little one the customized soothing motions he or she loves, so you both can get some much needed shut-eye", "Whether they need just a quick snooze or are ready to settle in for the night the Rock 'n Play sleeper's comfortable, restful environment and dual autorocking settings help teeny-tiny ones wind down and relax with a consistent routine", "Inclined sleeper designed for all-night sleep", "Baby can sleep at a comfy incline **all night long!**"

10.      The Rock 'n Play was marketed and represented as a product safe and suitable for use with infant aged children.

11.      On March 31, 2019, the plaintiff was placed in the subject Rock 'n Play sleeper for rest while in a state of good health and liveliness.

12.      On March 31, 2019, the plaintiff was later found unresponsive while still lying in the subject Rock 'n Play. The plaintiff was ultimately pronounced dead on March 31, 2019 at 5:52 a.m. She was two months, five days old at the time of her death.

**MOORE, O'BRIEN & FOTI**   •   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

13.     Unknown to the plaintiff and her family, dozens of infants had previously died as a result of the dangerous and defective condition of the Rock 'n Play.

14.     The defendant had knowledge of the dangerous and defective nature of the Rock 'n Play prior to the plaintiff's death.

15.     The defendant had been put on notice of other infant deaths prior to that of the plaintiff.

16.     The defendant had been urged to stop selling and/or recall the Rock 'n Play prior to the plaintiff's death, yet failed to do so.

17.     The line of Rock 'n Play products was not recalled until after more than thirty infants died, such as the plaintiff, on April 12, 2019, less than two weeks after the plaintiff's death.

18.     The design, construction, and implementation of the Rock 'n Play was dangerous and defective in one or more of the following ways:

a.      The Rock 'n Play incorporated a dangerous and/or defective design which was not flat and forced an infant to sleep in an "L" shape with the knees flexed up toward the abdomen;

b.      The Rock 'n Play held infants in an inclined position which allowed their head to roll downward and to the side- closing off the airway;

c.      The Rock 'n Play was soft and plush rather than firm;

**MOORE, O'BRIEN & FOTI**  •  *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE  •  MIDDLEBURY, CT 06762  •  TEL. (203) 272-5881  •  JURIS NO. 408519

d.      The padding utilized and/or incorporated in the Rock 'n Play created a suffocation risk when infants turn their head;

e.      It allowed and/or caused infants to roll from their back to their stomach or side while unrestrained; and,

f.      The Rock 'n Play was marketed as a sleeper, when in fact it was unsuitable and unsafe for overnight or prolonged sleep.

19.     As a result of the defective condition of the defendant's product(s), specifically the Rock 'n Play sleeper, the deceased plaintiff, **CALI DREAM FRED**, suffered the following injuries and losses:

a.      Positional asphyxiation;

b.      Suffocation and hypoxemia;

c.      Anoxic injury;

d.      Death; and,

e.      Pre-death pain and suffering both mental and physical.

20.     As a further result of the defective condition of the defendant's product(s), specifically the Rock 'n Play, the plaintiff was forced to spend large sums of money for hospital and emergent medical care, and funeral expenses.

**MOORE, O'BRIEN & FOTI** • *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE • MIDDLEBURY, CT 06762 • TEL. (203) 272-5881 • JURIS NO. 408519

21.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered the loss of life itself, and is thus unable to participate in and enjoy any activities of life.

22.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered a loss of future earning capacity due to her death.

23.     At the time the defendant manufactured, distributed and/or sold the product(s) which is the subject of this lawsuit, it was engaged in the business of selling infant, child, and family products, such as the Rock 'n Play sleeper and was a "product seller" within the meaning of section 52-572m of the Connecticut General Statutes.

24.     These defects caused the injuries, death, and losses for which the plaintiff seeks compensation.

25.     These defects existed at the time the defendant sold the product.

26.     At all times mentioned herein, the defendant's product(s) was/were without substantial change from the condition in which it was manufactured, distributed and/or sold by the defendant.

27.     At all times mentioned herein, the subject Rock 'n Play was used as a sleeper in a foreseeable manner and was done so without modification, alteration, or disruption from its original factory design and production.

85

28.    The plaintiff's injuries and losses described above were also caused by the negligence of the defendant in one or more of the following ways:

a.    It failed to properly research the design of the Rock 'n Play prior to its sale;

b.    It failed to properly inspect the Rock 'n Play;

c.    It failed to properly test the Rock 'n Play;

d.    The Rock 'n Play incorporated a dangerous, unsafe, and/or defective design;

e.    The Rock 'n Play was manufactured in a dangerous, unsafe, and/or defective way, yet still sold by the defendant;

f.    The Rock 'n Play incorporated several components and/or characteristics which led to infant death, such as that of the plaintiff;

g.    It failed to adequately warn the intended users of the Rock 'n Play, of its dangerous condition(s);

h.    It failed to provide adequate instructions for the Rock 'n Play's safe use;

i.    It failed to provide adequate assembly and/or use instructions and/or failed to adequately warn intended users of the risk of the Rock 'n Play causing infant injury/death if it was not assembled/used properly;

j.    It failed to identify and/or remove dangerous and/or defective Rock 'n Play from its product line when it knew or should have known that said Rock 'n

86

Play would likely be purchased by customers and pose a dangerous condition that can lead to infant injury/death;

k.      It failed to conduct investigations, testing, or redesign the Rock 'n Play after infant injury/death was first reported to it;

l.      It failed to recall the Rock 'n Play in a timely manner;

m.      It failed to sell, provide, and/or package the Rock 'n Play with informative packaging and/or materials;

n.      It failed to counsel, instruct, inform, and/or teach its customers on proper assembly, installation, application, and/or usage techniques for the Rock 'n Play; and,

o.      It failed to verify the safety of the Rock 'n Play it sold both prior to and during its sale of the item.

29.      In accordance with <u>Bifolck v. Philip Morris, Inc.</u>, 324 Conn. 402 (2016), the plaintiff alleges that the defendant's product is claimed to be unreasonably dangerous under the "risk utility test" because:

a.      A reasonable alternative design could have reduced or avoided the danger; and

87

b.      The design of the product marketed is manifestly unreasonable in that the risk of harm from the product so clearly exceeds its utility that a reasonable, informed consumer would not purchase the product.

30.     The defendant also impliedly warranted that the product was of merchantable quality.

31.     The defendant breached this implied warranty of merchantability.

32.     As a result of the defendant's breach of this implied warranty of merchantability, the plaintiff suffered the injuries, death, and losses more fully described above.

33.     The defendant also expressly warranted that the product(s) was/were fit for its ordinary purpose and safe for its intended uses.

34.     The plaintiff relied upon the express warranties made by the defendant.

35.     The defendant breached these express warranties.

36.     As a result of the defendant's breach of these express warranties, the plaintiff suffered the injuries and losses more fully described above.

88

**THIRTY-FOURTH COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali**
**Dream Fred v. Wal-Mart.com USA, LLC- (Recklessness Pursuant to C.G.S. 52-240b)**

1-36.   Paragraphs 1-36 of the Thirty-Seventh Count are hereby incorporated by reference and made corresponding paragraphs of this, the Thirty-Eighth Count, as though fully set forth herein.

37.   The defendant, **WAL-MART.COM USA, LLC**, acted with reckless disregard for the safety of customers and/or product users, such as the plaintiff, to whom its Rock 'n Play was promoted and sold for use, and as a direct and proximate consequence of **WAL-MART.COM USA, LLC's** reckless disregard for the safety of its customers and/or product users, the plaintiff is entitled to punitive damages pursuant to C.G.S. Sec. 52-240b.

**THIRTY-FIFTH COUNT:**
**Tanequa Monique Brayboy v. Wal-Mart.com USA, LLC- (Loss of Consortium)**

1-36.   Paragraphs 1 through 36 of the Thirty-Seventh Count are hereby incorporated and made paragraphs 1 through 36 of this Thirty-Ninth Count as if fully set forth herein.

37.   At all relevant times, the plaintiff, **TANEQUA BRAYBOY**, was the lawful mother of the plaintiff, **CALI DREAM FRED**.

MOORE, O'BRIEN & FOTI   •   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

38.    As a result of the conduct of the defendant, **WAL-MART.COM USA, LLC**, the plaintiff, **TANEQUA BRAYBOY,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**THIRTY-SIXTH COUNT:**
**Mickey Fred v. Wal-Mart.com USA, LLC- (Loss of Consortium)**

1-36.    Paragraphs 1 through 36 of the Thirty-Seventh Count are hereby incorporated and made paragraphs 1 through 36 of this Fortieth Count as if fully set forth herein.

37.    At all relevant times, the plaintiff, **MICKEY FRED**, was the lawful father of the plaintiff, **CALI DREAM FRED**.

38.    As a result of the conduct of the defendant, **WAL-MART.COM USA, LLC**, the plaintiff, **MICKEY FRED,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED**.

**THIRTY-SEVENTH COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali Dream Fred v. Rachel Ford- (Product Liability)**

1.    On March 31, 2019, **CALI DREAM FRED** lost her life.  On June 6, 2019 **TANEQUA MONIQUE BRAYBOY** and **MICKEY FRED** were appointed **CO-ADMINISTRATORS of the Estate of CALI DREAM FRED** in the District of Bridgeport, Probate Court No. PD48, and are duly authorized to act in that capacity.

90

2.     This action is brought as a "product liability claim" within the meaning of that term as described in section 52-572m(b) of the Connecticut General Statutes and pursuant to and in accordance with the terms and provisions of the Connecticut "Product Liability Law" sections 52-572m through 52-572r of the Connecticut General Statutes.

3.     At all times mentioned herein, the defendant, **RACHEL FORD,** was a resident of the State of Connecticut.

4.     At all times mentioned herein, the defendant, **RACHEL FORD**, was the general manager for Wal-Mart Store # 2163 located at 465 Bridgeport Avenue in Shelton, Connecticut.

5.     At all times mentioned herein, the defendant, **RACHEL FORD**, was responsible for sales, products, inventory, display, advertisement, customer relations, management, control, and/or operations at Wal-Mart Store # 2163 located at 465 Bridgeport Avenue in Shelton, Connecticut.

6.     At all times relevant hereto, the defendant was engaged in the business of designing, manufacturing, distributing and/or selling toys, family products, and child products including, but not limited to, the "Auto Rock 'n Play Sleeper", hereinafter referred to as the "Rock 'n Play".

7.     The manufacture, distribution and/or sale of the Rock 'n Play by the defendant was done with the reasonable expectation that said product was to be used or

**MOORE, O'BRIEN & FOTI** • *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE • MIDDLEBURY, CT 06762 • TEL. (203) 272-5881 • JURIS NO. 408519

consumed in this State and/or was so used within the meaning of Connecticut General Statutes section 52-572m, et seq.

8.      The subject Rock 'n Play was purchased in a retail setting at the Wal-Mart Store # 2163 located at 465 Bridgeport Avenue in Shelton, Connecticut.

9.      The subject Rock 'n Play was purchased from the defendant as a product intended to be used for its marketed and designed purpose: child rest, relaxation, placement, sleep, and/or sitting.

10.      The defendants, **MATTEL, INC**. and/or **FISHER-PRICE, INC.**, first introduced the Rock 'n Play line of products in or around 2009.

11.      Since the defendant introduced the Rock 'n Play into the marketplace, it had advertised and represented to its customers that the Rock 'n Play products were a safe and convenient baby product. It was represented and marketed that: "The inclined seat helps your baby sleep all night", "Baby can sleep at a comfortable **incline** all night long", "This sleeper **rocks, hands free!**", "This sleeper helps give your little one the customized soothing motions he or she loves, so you both can get some much needed shut-eye", "Whether they need just a quick snooze or are ready to settle in for the night the Rock 'n Play sleeper's comfortable, restful environment and dual autorocking settings help teeny-tiny ones wind down and relax with a consistent routine", "Inclined sleeper designed for all-night sleep", "Baby can sleep at a comfy incline **all night long!**"

92

12.     The Rock 'n Play was marketed and represented as a product safe and suitable for use with infant aged children.

13.     On March 31, 2019, the plaintiff was placed in the subject Rock 'n Play sleeper for rest while in a state of good health and liveliness.

14.      On March 31, 2019, the plaintiff was later found unresponsive while still lying in the subject Rock 'n Play. The plaintiff was ultimately pronounced dead on March 31, 2019 at 5:52 a.m. She was two months, five days old at the time of her death.

15.     Unknown to the plaintiff and her family, dozens of infants had previously died as a result of the dangerous and defective condition of the Rock 'n Play.

16.     The defendant had knowledge of the dangerous and defective nature of the Rock 'n Play prior to the plaintiff's death.

17.     The defendant had been put on notice of other infant deaths prior to that of the plaintiff.

18.     The defendant had been urged to stop selling and/or recall the Rock 'n Play prior to the plaintiff's death, yet failed to do so.

19.     The line of Rock 'n Play products was not recalled until after more than thirty infants died, such as the plaintiff, on April 12, 2019, less than two weeks after the plaintiff's death.

MOORE, O'BRIEN & FOTI   •   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

20.     The design, construction, and implementation of the Rock 'n Play was dangerous and defective in one or more of the following ways:

a.      The Rock 'n Play incorporated a dangerous and/or defective design which was not flat and forced an infant to sleep in an "L" shape with the knees flexed up toward the abdomen;

b.      The Rock 'n Play held infants in an inclined position which allowed their head to roll downward and to the side- closing off the airway;

c.      The Rock 'n Play was soft and plush rather than firm;

d.      The padding utilized and/or incorporated in the Rock 'n Play created a suffocation risk when infants turn their head;

e.      It allowed and/or caused infants to roll from their back to their stomach or side while unrestrained; and,

f.      The Rock 'n Play was marketed as a sleeper, when in fact it was unsuitable and unsafe for overnight or prolonged sleep.

21.     As a result of the defective condition of the defendant's product(s), specifically the Rock 'n Play sleeper, the deceased plaintiff, **CALI DREAM FRED**, suffered the following injuries and losses:

a.      Positional asphyxiation;

b.      Suffocation and hypoxemia;

94

c.      Anoxic injury;

d.      Death; and,

e.      Pre-death pain and suffering both mental and physical.

22.     As a further result of the defective condition of the defendant's product(s), specifically the Rock 'n Play, the plaintiff was forced to spend large sums of money for hospital and emergent medical care, and funeral expenses.

23.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered the loss of life itself, and is thus unable to participate in and enjoy any activities of life.

24.     As a further result of the defective condition of the defendant's product, the plaintiff has suffered a loss of future earning capacity due to her death.

25.     At the time the defendant manufactured, distributed and/or sold the product(s) which is the subject of this lawsuit, it was engaged in the business of selling infant, child, and family products, such as the Rock 'n Play sleeper and was a "product seller" within the meaning of section 52-572m of the Connecticut General Statutes.

26.     These defects caused the injuries, death, and losses for which the plaintiff seeks compensation.

27.     These defects existed at the time the defendant sold the product.

95

28.     At all times mentioned herein, the defendant's product(s) was/were without substantial change from the condition in which it was manufactured, distributed and/or sold by the defendant.

29.     At all times mentioned herein, the subject Rock 'n Play was used as a sleeper in a foreseeable manner and was done so without modification, alteration, or disruption from its original factory design and production.

30.     The plaintiff's injuries and losses described above were also caused by the negligence of the defendant in one or more of the following ways:

a.      It failed to properly research the design of the Rock 'n Play prior to its sale;

b.      It failed to properly inspect the Rock 'n Play;

c.      It failed to properly test the Rock 'n Play;

d.      The Rock 'n Play incorporated a dangerous, unsafe, and/or defective design;

e.      The Rock 'n Play was manufactured in a dangerous, unsafe, and/or defective way, yet still sold by the defendant;

f.      The Rock 'n Play incorporated several components and/or characteristics which led to infant death, such as that of the plaintiff;

g.      It failed to adequately warn the intended users of the Rock 'n Play, of its dangerous condition(s);

h.      It failed to provide adequate instructions for the Rock 'n Play's safe use;

96

i.      It failed to provide adequate assembly and/or use instructions and/or failed to adequately warn intended users of the risk of the Rock 'n Play causing infant injury/death if it was not assembled/used properly;

j.      It failed to identify and/or remove dangerous and/or defective Rock 'n Play from its product line when it knew or should have known that said Rock 'n Play would likely be purchased by customers and pose a dangerous condition that can lead to infant injury/death;

k.      It failed to conduct investigations, testing, or redesign the Rock 'n Play after infant injury/death was first reported to it;

l.      It failed to recall the Rock 'n Play in a timely manner;

m.      It failed to sell, provide, and/or package the Rock 'n Play with informative packaging and/or materials;

n.      It failed to counsel, instruct, inform, and/or teach its customers on proper assembly, installation, application, and/or usage techniques for the Rock 'n Play; and,

o.      It failed to verify the safety of the Rock 'n Play it sold both prior to and during its sale of the item.

**MOORE, O'BRIEN & FOTI** • *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE • MIDDLEBURY, CT 06762 • TEL. (203) 272-5881 • JURIS NO. 408519

31.     In accordance with <u>Bifolck v. Philip Morris, Inc.</u>, 324 Conn. 402 (2016), the plaintiff alleges that the defendant's product is claimed to be unreasonably dangerous under the "risk utility test" because:

a.     A reasonable alternative design could have reduced or avoided the danger; and

b.     The design of the product marketed is manifestly unreasonable in that the risk of harm from the product so clearly exceeds its utility that a reasonable, informed consumer would not purchase the product.

32.     The defendant also impliedly warranted that the product was of merchantable quality.

33.     The defendant breached this implied warranty of merchantability.

34.     As a result of the defendant's breach of this implied warranty of merchantability, the plaintiff suffered the injuries, death, and losses more fully described above.

35.     The defendant also expressly warranted that the product(s) was/were fit for its ordinary purpose and safe for its intended uses.

36.     The plaintiff relied upon the express warranties made by the defendant.

37.     The defendant breached these express warranties.

98

38. As a result of the defendant's breach of these express warranties, the plaintiff suffered the injuries and losses more fully described above.

**THIRTY-EIGHTH COUNT:**
**Tanequa Monique Brayboy and Mickey Fred, Co-Administrators of the Estate of Cali Dream Fred v. Rachel Ford- (Recklessness Pursuant to C.G.S. 52-240b)**

1-38. Paragraphs 1-38 of the Forty-First Count are hereby incorporated by reference and made corresponding paragraphs of this, the Forty-Second Count, as though fully set forth herein.

39. The defendant, **RACHEL FORD**, acted with reckless disregard for the safety of customers and/or product users, such as the plaintiff, to whom its Rock 'n Play was promoted and sold for use, and as a direct and proximate consequence of **RACHEL FORD** reckless disregard for the safety of its customers and/or product users, the plaintiff is entitled to punitive damages pursuant to C.G.S. Sec. 52-240b.

**THIRTY-NINTH COUNT:**
**Tanequa Monique Brayboy v. Rachel Ford- (Loss of Consortium)**

1-38. Paragraphs 1 through 38 of the Forty-First Count are hereby incorporated and made paragraphs 1 through 38 of this Forty-Third Count as if fully set forth herein.

39. At all relevant times, the plaintiff, **TANEQUA BRAYBOY**, was the lawful mother of the plaintiff, **CALI DREAM FRED**.

99

40.     As a result of the conduct of the defendant, **RACHEL FORD**, the plaintiff, **TANEQUA BRAYBOY,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED.**

**FORTIETH COUNT:**
**Mickey Fred v. Wal-Mart.com USA, LLC- (Loss of Consortium)**

1-38.   Paragraphs 1 through 38 of the Forty-First Count are hereby incorporated and made paragraphs 1 through 38 of this Forty-Fourth Count as if fully set forth herein.

39.     At all relevant times, the plaintiff, **MICKEY FRED**, was the lawful father of the plaintiff, **CALI DREAM FRED.**

40.     As a result of the conduct of the defendant, **RACHEL FORD**, the plaintiff, **MICKEY FRED,** has suffered a loss of affection, companionship, society, and consortium of **CALI DREAM FRED.**

**MOORE, O'BRIEN & FOTI**   •   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

WHEREFORE, the plaintiff seeks:

1. Monetary and/or Compensatory Damages.
2. Punitive Damages pursuant to C.G.S. Sec. 52-240b.
3. Attorney's Fees pursuant to C.G.C. Sec. 52-240a.
4. Costs.

THE PLAINTIFFS,
TANEQUA   MONIQUE   BRAYBOY   AND
MICKEY FRED, CO-ADMINISTRATORS OF
THE   ESTATE   OF   CALI   DREAM   FRED,
TANEQUA BRAYBOY, and MICKEY FRED

By _____
    Joseph R. Rossetti, Esq.
    Moore, O'Brien & Foti
    891 Straits Turnpike
    Middlebury, CT 06762
    Phone: (203) 272-5881
    Juris No.: 408519
    Their Attorney

101

| | | |
|---|---|---|
| **RETURN DATE: March 16, 2021** | : | **SUPERIOR COURT** |
| **TANEQUA MONIQUE BRAYBOY and** | : | **J.D. OF BRIDGEPORT** |
| **MICKEY FRED, CO-ADMINISTRATORS** | : | |
| **OF THE ESTATE OF** | : | |
| **CALI DREAM FRED,** | : | |
| **TANEQUA MONIQUE BRAYBOY, individually,** | : | |
| **and MICKEY FRED, individually** | : | |
| | : | |
| **V.** | : | **AT BRIDGEPORT** |
| | | |
| **FISHER-PRICE, INC.; MATTEL, INC.;** | : | |
| **WAL-MART, INC.; WAL-MART** | : | |
| **ASSOCIATES, INC.; WAL-MART** | : | |
| **TRANSPORTATION, LLC;** | : | |
| **WAL-MART STORES EAST, LIMITED** | : | |
| **PARTNERSHIP; WAL-MART CO. USA, LLC;** | : | |
| **WAL-MART REALTY CO.;** | : | |
| **WAL-MART TRS, LLC; and RACHEL FORD** | : | **FEBRUARY 11, 2020** |

## STATEMENT OF AMOUNT IN DEMAND

The amount of money damages claimed is greater than Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

**MOORE, O'BRIEN & FOTI**   •   *ATTORNEYS AT LAW*
891 STRAITS TURNPIKE   •   MIDDLEBURY, CT 06762   •   TEL. (203) 272-5881   •   JURIS NO. 408519

THE PLAINTIFFS,
TANEQUA MONIQUE BRAYBOY AND
MICKEY FRED, CO-ADMINISTRATORS OF
THE ESTATE OF CALI DREAM FRED,
TANEQUA BRAYBOY, and MICKEY FRED

By_____
    Joseph R. Rossetti, Esq.
    Moore, O'Brien & Foti
    891 Straits Turnpike
    Middlebury, CT 06762
    Phone: (203) 272-5881
    Juris No.: 408519
    Their Attorney

<u>OFFICER'S RETURN TO COURT</u>

STATE OF CONNECTICUT:
                                : SS: EAST HARTFORD        FEBRUARY 17, 2021
COUNTY OF HARTFORD :


Then and by virtue hereof and by direction of the Plaintiff's attorney, I made due and legal service upon the within named Defendant, **WALMART INC.,** by leaving a verified true and attested copy of the original WRIT SUMMONS-CIVIL, CIVIL SUMMONS CONTINUATION OF PARTIES, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, with GARY SCAPPINI, who is authorized to accept service for CT CORPORATION SYSTEM, AGENT FOR SERVICE for the within named Defendant, at 67 Burnside Avenue, East Hartford, Connecticut.


And then thereafter and by virtue hereof and by direction of the Plaintiff's attorney, I made due and legal service upon the within named Defendant, **WAL-MART ASSOCIATES, INC.,** by leaving a verified true and attested copy of the original WRIT SUMMONS-CIVIL, CIVIL SUMMONS CONTINUTAION OF PARTIES, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, with GARY SCAPPINI, who is authorized to accept service for CT CORPORATION SYSTEM, AGENT FOR SERVICE for the within named Defendant, at 67 Burnside Avenue, East Hartford, Connecticut.

1

And then thereafter and by virtue hereof and by direction of the Plaintiff's attorney, I made due and legal service upon the within named Defendant, **WAL-MART STORES EAST, LIMITED PARTNERSHIP,** by leaving a verified true and attested copy of the original WRIT SUMMONS-CIVIL, CIVIL SUMMONS CONTINUATION OF PARTIES, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, with GARY SCAPPINI, who is authorized to accept service for CT CORPORATION SYSTEM, AGENT FOR SERVICE for the within named Defendant, at 67 Burnside Avenue, East Hartford, Connecticut.

And then thereafter and by virtue hereof and by direction of the Plaintiff's attorney, I made due and legal service upon the within named Defendant, **WAL-MART TRANSPORTATION, LLC,** by leaving a verified true and attested copy of the original WRIT SUMMONS-CIVIL, CIVIL SUMMONS CONTINUATION OF PARTIES, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, with GARY SCAPPINI, who is authorized to accept service for CT CORPORATION SYSTEM, AGENT FOR SERVICE for the within named Defendant, at 67 Burnside Avenue, East Hartford, Connecticut.

And then thereafter and by virtue hereof and by direction of the Plaintiff's attorney, I made due and legal service upon the within named Defendant, **WAL-MART TRS, LLC,** by leaving a verified true and attested copy of the original WRIT SUMMONS-CIVIL, CIVIL SUMMONS CONTINUATION OF PARTIES, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, with GARY SCAPPINI, who is authorized to accept service for CT CORPORATION SYSTEM, AGENT FOR SERVICE for the within named Defendant, at 67 Burnside Avenue, East Hartford, Connecticut.

2

And then thereafter and by virtue hereof and by direction of the Plaintiff's attorney, I made due and legal service upon the within named Defendant, **WAL-MART.COM USA, LLC,** by leaving a verified true and attested copy of the original WRIT SUMMONS-CIVIL, CIVIL SUMMONS CONTINUATION OF PARTIES, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, with GARY SCAPPINI, who is authorized to accept service for CT CORPORATION SYSTEM, AGENT FOR SERVICE for the within named Defendant, at 67 Burnside Avenue, East Hartford, Connecticut.

And then thereafter and by virtue hereof and by direction of the Plaintiff's attorney, I made due and legal service upon the within named Defendant, **WAL-MART STORES EAST, INC.,** by leaving two verified true and attested copies of the original WRIT SUMMONS-CIVIL, CIVIL SUMMONS CONTINUATION OF PARTIES, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, at the office of DENISE MERRILL, Secretary of the State of Connecticut, at least twelve days before the session of the Court to which this writ is returnable.  Said Secretary of the State of Connecticut is the duly authorized agent and attorney to accept service for the within named Defendant, at 30 Trinity Street, Hartford, Connecticut.

And then thereafter and by virtue hereof and by direction of the Plaintiff's attorney and by virtue hereof and by direction of the Plaintiff's attorney, I deposited a verified true and attested copy of the original WRIT SUMMONS-CIVIL, CIVIL SUMMONS CONTINUATION OF PARTIES, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, with my doings thereon endorsed, at the U.S. Post Office, postage pre-paid, certified and return receipt requested, addressed to the within named Defendant,  **FISHER-PRICE, INC., C/O THE SECRETARY, 636 GIRARD AVENUE, EAST AURORA, NY 14062.**

SUPPLEMENTAL RETURN TO FOLLOW

3

And then thereafter and by virtue hereof and by direction of the Plaintiff's attorney and by virtue hereof and by direction of the Plaintiff's attorney, I deposited a verified true and attested copy of the original WRIT SUMMONS-CIVIL, CIVIL SUMMONS CONTINUATION OF PARTIES, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND,  with my doings thereon endorsed, at the U.S. Post Office, postage pre-paid, certified and return receipt requested, addressed to the within named Defendant, **MATTEL, INC., C/O THE SECRETARY, 333 CONTINENTAL BOULEVARD, EL SEGUNDO, CA 90245.**
SUPPLEMENTAL RETURN TO FOLLOW

And then thereafter and by virtue hereof and by direction of the Plaintiff's attorney, I left a true and attested copy of the within original WRIT SUMMONS-CIVIL, CIVIL SUMMONS CONTINUATION OF PARTIES, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, with and in the hands **JOSE ORAMA, ASSISTANT WAL-MART STORE MANAGER,** for the within named Defendant, **RACHEL FORD, (FORMER WAL-MART STORE MANAGER)**, at 465 Bridgeport Avenue, Shelton, Connecticut.

And then thereafter, on the 28th day of February, 2021, then and by virtue hereof and by direction of the Plaintiff's attorney, I left a true and attested copy of the within original WRIT SUMMONS-CIVIL, CIVIL SUMMONS CONTINUATION OF PARTIES, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, at the usual place of abode of the within named Defendant, **RACHEL FORD, (WAL-MART STORE MANAGER-former)**, at 23 Rock Hill Road, Apartment A, New Haven, Connecticut.

4

The within is the original WRIT SUMMONS-CIVIL, CIVIL SUMMONS CONTINUATION OF PARTIES, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, with my doings thereon endorsed.

ATTEST:

JOHN A. LEPITO, JR.
STATE MARSHAL
Hartford County

FEES:
Service             $340.00
Travel               108.00
Copies              1236.00
Sec. of State         50.00
Postage               22.00
Endorsements          14.80

TOTAL:             $1770.80

5